Leeds *v.* The City of Richmond.

Filed June 24, 1885.

---

No. 9912.

LEEDS *v.* THE CITY OF RICHMOND.

MUNICIPAL CORPORATION.—*Incidental Powers.*—*Sewers.*—*Contract.*—The authority to construct sewers needed for the drainage of streets is an incidental power of a municipal corporation invested with the general power over highways within the corporate limits, and the corporate officers have authority to contract for a right to construct a sewer through private property.

SAME.—*Public Improvements.*—*Discretion of Corporate Officers.*—It is for the corporate officers, and not for the court, to determine when a public improvement is necessary, and what its general plan and character shall be.

SAME.—*Eminent Domain.*—*Contract.*—*Statute.*—The right to seize private property by virtue of the eminent domain must be conferred upon municipal corporations by statute; but the right to acquire property for corporate purposes by contract need not be expressly conferred by statute, and the delegation of the right to seize property under the eminent domain does not necessarily exclude the right to acquire property by contract.

SAME.—*Liability of Corporation for Torts and Contracts of Officers.*—*Sewers.*—Municipal corporations are not responsible for the torts of its officers, nor for breach of contract, when the acts of the officers are beyond the general powers of the corporation; but they are responsible when the acts of the officers are within the general corporate powers, and the construction of a public sewer is an act within the scope of the general powers of a municipal corporation.

SAME.—*Respondeat Superior.*—*Independent Contractor.*—*Damages.*—The general rule is that a municipal corporation is not responsible for the negligence of an independent contractor; but this general rule does not apply where the corporation secures a right of way through private property, and expressly contracts to pay all damages occasioned by the con-

Leeds *v.* The City of Richmond.

struction of the public work; in such a case the maxim *respondeat superior* applies.

SAME.—*Injuries from Negligence not part of Expense of Public Improvement Assessable Against Private Property.—Sewers.—Assessment.*—Damages arising from injuries occasioned by negligence in the construction of a public sewer by a municipal corporation are not part of the expense of constructing the sewer, and can not be assessed against private property, but must be paid out of the general treasury.

PLEADING.—A pleading must proceed on a definite theory, and a complaint can not be good both as a complaint for a breach of contract and as a complaint to recover for injuries occasioned by a negligent breach of duty.

PARTIES.—*Real Party in Interest.—Husband and Wife.*—The owner of the property injured by the negligence of another is the real party in interest and the proper plaintiff; this is so although the owner is a married woman and her husband is the general manager of the property.

From the Wayne Circuit Court.

*W. A. Bickle* and *T. J. Study,* for appellant.

*W. D. Foulke* and *J. L. Rupe,* for appellee.

ELLIOTT, J.—The appellant alleges in her complaint that she and her husband were the lessees of real estate in the city of Richmond; that she has expended large sums of money in erecting buildings on the land and in providing them with appliances for the purpose of propagating and cultivating plants and flowers; that the city, having determined to build a sewer along an alley on the northeast side of the appellant's land, and desiring to use for that purpose a part of the land, did enter into an agreement with her and her husband, who has since died; that the object of the agreement was to prevent delays that might be caused by litigation; that the city was fully informed at the time of making the contract of the exposure of the buildings and appliances to injury from blasting. It is also alleged that the city let the work to an insolvent person by the name of Shafer, who gave bond, with approved surety, for the performance of the work; that the persons engaged in constructing the sewer, in a negligent, wanton and reckless manner, tore up water pipes, and by reck-

less and careless blasting caused great injury to the appellant's property.

It is further alleged that the appellant demanded of the appellee that an arbitrator be appointed, as provided in the agreement, and she selected one, but the appellee refused to take any action whatever, or to pay the damages sustained by the plaintiff, or to perform any part of the contract; that afterwards, and without notice to the appellant, the city released Shafer and his sureties from the bond executed by them to secure the performance of the work. The agreement referred to in the complaint and made part of it reads as follows: " This agreement, made this 19th day of April, 1880, between Noah S. Leeds and Hannah A. Leeds, his wife, of the city of Richmond, parties of the first part, and the said city of Richmond, of the second part, witnesseth, That whereas, the said city desires to construct a certain sewer or outlet for water according to the plans and specifications heretofore made by the city civil engineer of said city, and now on file in said engineer's office, which said sewer or outlet is to pass through certain premises now occupied and leased by the parties of the first part, along the line as shown upon the said plan, and in the construction of said sewer or outlet certain damages will be occasioned to said premises which are now used for green-houses and flower gardens: Now this agreement witnesseth that the said parties of the first part agree that said city may enter upon their premises, construct and maintain across said premises, according to said plans, the said sewer or outlet for water, and said parties of the first part agree to remove a certain green-house now across the line of said proposed sewer or outlet at their own cost and expense, all for and in consideration of the payment hereinafter named to be made therefor ; and the said city of Richmond does hereby agree and bind herself to pay the said parties of the first part for the privilege aforesaid and for the removal of said green-house, and all damage in going through said premises, except those hereafter named, the sum of three hundred

dollars; and do further agree to construct said sewer or outlet so as to do as little damage as possible to said premises; and if some extraordinary damage shall be done, occasioned by the negligent construction of said sewer, or by reason of blasting, then, and in that event, the said city shall further pay to said parties of the first part such reasonable sum as shall be a proper compensation for such damage; and if any damage is claimed by the parties of the first part other than that occasioned by the construction of said work through said premises in an ordinary and careful manner, or shall claim damages for any extraordinary thing that may occur to said premises on account of said work, such as blasting or the like, then such damages shall be determined by arbitrators, one of which shall be selected by the parties of the first part, and one by the said city, which two shall choose a third, and their decision upon the question of such damages shall be final and binding upon all parties. It is also expressly agreed and understood that no right is conveyed or granted to said city by this instrument except such as is plainly indicated herein as necessary to the building, completion and maintaining such sewer or outlet through said grounds; and it is further understood and agreed that all rights and privileges granted to said city hereunder are made upon this express condition, that such rights granted and the construction of said works through said grounds shall not interfere with the supply of water as now enjoyed by said parties of the first part, but such supply must be maintained as it now is; but said city may, before the beginning of the work aforesaid upon the premises occupied by said parties of the first part, move the supply pipe which now conveys the water from the cistern or well on Central avenue west of the line of the proposed work and out of the way of the same, and re-lay said pipe along the ravine west of its present location, so as not to interfere in any wise with any building or structures on said premises, and so that the same shall lead directly to the hydraulic ram as it is now located, and so as to conduct the supply of water from

the same source as now to said ram; and that said city, at the same time, may remove the pipe through which the water is now forced from said ram to the tank as now located, so that the same shall conduct the water perfectly as now, but out of the way of said proposed work; and that if it shall become necessary, said city may take away the board box around the said ram as now located, and build a stone wall around or along the same, but shall not interfere with the working or proper use of the same; and if, in the relaying of said conducting pipes further west as aforesaid, it shall be necessary, the said city shall furnish in the large tank now used for the purpose a sufficient supply of water for the ordinary purposes of the parties of the first part until said pipes are relaid and in successful operation, all of which work of relaying said pipes and replacing the same, and furnishing a supply of water while the same is being done, shall be at the expense of the city."

The authority to construct sewers is regarded as incident to the general right of a municipal corporation to maintain streets and highways. *Cone* v. *City of Hartford*, 28 Conn. 363; *Fisher* v. *Harrisburg*, 2 Grant Pa. 291; *Stoudinger* v. *City of Newark*, 28 N. J. Eq. 187.

The act for the incorporation of cities in express terms confers exclusive jurisdiction upon municipal corporations over all highways within their limits, and also confers broad powers respecting drains and sewers. There is, therefore, a general authority vested in cities to construct sewers, and, as there is this general power, there is, involved in it, all subsidiary powers essential to make it effective. If a sewer or drain, necessary for the drainage of public streets, can not be constructed without crossing private property, then the city has, as an implied power, the right to acquire the property by lawful means. If it were otherwise, there might be cases where it would be impossible for the city to obtain an outlet for its drains and sewers. Whether it is or is not necessary to build a sewer or drain across private property, is a question for the

municipal authorities, for it is well settled that courts can not undertake to determine what improvements are necessary, or upon what particular plan they shall be made. *City of Kokomo* v. *Mahan*, 100 Ind. 242; *Macy* v. *City of Indianapolis*, 17 Ind. 267.

The authority of a municipal corporation to hold or acquire property need not be expressly conferred, for, where there is a general power which can not be effectively exercised without the acquisition of property, the right to acquire property is impliedly vested in the public corporation. 2 Dillon Mun. Corp. (3d ed.), section 581; *Hayward* v. *Davidson*, 41 Ind. 212. If there is no restriction in the charter, property may be acquired in any ordinary method; but if the charter prescribes a particular mode of acquiring property, that mode must be followed. The right to obtain property by extraordinary proceedings must be expressly conferred, but the authority to secure it by the ordinary methods may be implied. The high and extraordinary power of eminent domain may not exist without a special grant of power, but the ordinary power to acquire title by purchase may exist without an express grant in cases where it is necessary to effectuate the principal power granted. *Allen* v. *Jones*, 47 Ind. 438; 2 Dillon Mun. Corp., sections 574, 575, n.

An act conferring upon a municipal corporation extraordinary powers can not be construed to take from it ordinary corporate powers. An added power can not operate to subtract from existing powers. The act conferring upon cities power to seize property under the right of eminent domain can not be construed to deprive them of the power to acquire property by contract for that purpose. Doubtless, the Legislature might restrict the authority to acquire property to that method, but they have not done so, and, therefore, the power exists. The court, while not expressly deciding that land might be acquired for sewerage purposes in *Allen* v. *Jones, supra,* very clearly indicates that its opinion was that property might be thus acquired, for it was there said: " It

·can not be successfully claimed that the power to condemn lands of private persons is necessarily implied in the grant of power to enforce ordinances to construct sewers. The power may exist and be exercised in the construction of sewers along the streets and alleys of the city, or, when the right can be secured by contract, in the lands of private persons."

The act of March 17th, 1875, confers power to condemn lands for " sewerage purposes," and this is a legislative recognition of the general power to acquire lands for that purpose by purchase. It thus appears that we have both the legislative and judicial judgment that the general power resides in municipal corporations; but the question seems on principle so free from difficulty that without the influence of these authorities we should not hesitate to hold that the general power is possessed by municipal corporations when not denied by statute.

We can see no just reason for compelling a municipal corporation to resort to legal proceedings to secure an interest in land which the owner is willing to cede to it by contract. Nor is there any valid reason for subjecting a property-owner to the expense and annoyance of litigation when he desires to make terms with the party who seeks his property and offers an amicable settlement by mutual agreement. The law favors methods that prevent litigation, and sound public policy requires that contracts which secure all that litigation could accomplish shall be respected and sustained.

We do not doubt that the law is that where a mode of procedure is prescribed by statute it must be pursued; but, while thus far concurring with appellee's counsel, we are far from yielding to the conclusion at which they arrive. The fallacy of their argument is in unduly assuming that a special method of acquiring property is prescribed. This assumption can not be made good. The attempt to sustain it rests upon the theory that, having granted the power to exercise the right of eminent domain, the Legislature excluded the ordinary method of acquiring property by contract. What we have

already said exposes the infirmity of this assumption, but it may, perhaps, serve to set the matter in a clearer light to add an illustration. The power to build engine-houses, market-houses, and like public edifices, is generally possessed by public corporations, and will it be seriously contended that, because the municipal corporation is permitted and authorized to exercise the right of eminent domain, the right to acquire land by contract is denied? It is clear that the grant to a municipal corporation of the privilege of exercising the right of eminent domain does not exclude the authority to acquire property, for a corporate purpose, by contract.

The position that the contract is *ultra vires*, because a municipal corporation has no authority to construct sewers at the public expense can not be maintained. It is, without doubt, the law that a contract which a public corporation has no authority to make is void, and if it were granted that municipal corporations have no authority to make contracts for lands for sewerage purposes, then the conclusion deduced by the appellee would be a logical one, but there is authority to contract for sewers. We have already shown that such is the opinion of this court and such the legislative declaration; but, independent of these authorities, and reasoning on principle, there can be no just reason for doubting the existence of the power. We know, as a matter of which courts take judicial knowledge, that cities have authority to construct and improve streets, and that streets require drainage, and, as we know this, we must conclude, or else defy all rules of logic, that cities possess the power to construct sewers and drains. To deny this power to them would be to cripple the power to lay out and improve streets so greatly as to render it ineffective, and this would involve a violation of the familiar principle that the grant of a principal power carries with it all such subsidiary powers as are necessary to make it effectual. As municipal corporations possess this general power over drains and sewers, they possess, also, as an incident to that power, the right to employ the ordinary means of exercising

the power so as to make it effective.   *New England F. & M. Ins. Co.* v. *Robinson,* 25 Ind. 536; *City of Indianapolis* v. *Indianapolis Gas Light & Coke Co.,* 66 Ind. 396; 1 Dillon Mun. Corp., sections 371, 372.

In the contract set forth in the complaint, the use for which appellee's property was required, and for which it was obtained, is shown to be an outlet for a sewer.   If we should hold that a public corporation may not contract for an outlet for a sewer, then we should establish a rule that would often make it impossible to properly drain streets, or promote public health by sewerage, for there are cases where it is essential to obtain outlets through private property.   This certainly is so in cases where the natural stream into which the sewer flows lies beyond the corporate limits, and may often be so where it lies within those limits.   A city, as is well settled, that constructs a sewer, must provide an outlet.   *City of Evansville* v. *Decker,* 84 Ind. 325 (43 Am. R. 86).   But, if the power to acquire property needed for an outlet be denied, then it results that there may be cases in which sewers, however much needed, can not be made without entailing liability upon the corporation, and this is neither just nor reasonable.

It must not be forgotten that the question here is one of power.   If the city has no power to construct sewers, then the discussion is at an end; but if it has this power, then it may exercise it in any of the usual methods, because the statute does not prescribe the mode in which it shall be exercised. The power is, as we have shown, a general one, and is, as we have said, recognized by the Legislature and the court; but we may emphasize this point by again referring to the act of March, 1875.   That act expressly recognizes the existence of the power to construct sewers; it does, if that be possible, even more, for it proceeds solely upon the theory that the power exists.   If there is no such power, the act is fruitless, and the Legislature did a vain thing in enacting it.   It would be folly to provide for the condemnation of property for a use to which the corporation had no power to appropriate it.

There is no reason for supposing that the Legislature did such a vain and empty thing; on the contrary, we are bound, by all the rules of construction, to give effect to their act.

If the city can not contract for lands needed for an outlet to sewers, no one else can. Individuals have no authority in such matters; all authority resides in the municipal officers; they must act, and if they alone can act, then they possess authority to obtain property by the usual method—that of purchase.

A step further, although it may not be necessary, will make the validity of our conclusion more clearly appear. The power to lay assessments upon private property for local improvements is an extraordinary one, existing only by virtue of a clear and express legislative grant. The right to grant such a power was for a long time stoutly contested, and the courts, with much hesitation, sustained the power of the Legislature to make such grants. As there is no legislative grant of power to acquire private property for sewerage purposes at the expense of individuals, it must be that the authority does not exist, or that the property must be acquired and paid for by the corporation; and, as the authority does exist, private property may be acquired by the corporation for sewerage purposes.

We agree with the counsel for the appellee that where the act is beyond the power of the corporation, the city is not liable for the tortious acts of its officers, and certainly not for the tortious acts of contractors. A tort committed by corporate officers in the performance of an act not within the power of the municipal corporation will not create a liability against it, for to such cases the rule of *respondeat superior* does not apply. The rule which the authorities maintain is thus stated in *Smith* v. *City of Rochester*, 76 N. Y. 506: "The doctrine is well settled, that municipal corporations are within the operation of the general rule of law, that the superior or employer must answer civilly for the negligence or want of skill of an agent or servant in the course of their employ-

ment, by which another is injured. It is essential, however, to establish such a liability that the act complained of must be within the scope of the corporate powers, as provided by charter or other positive enactment of law. If the act done is committed outside of the authority and power of the corporation as conferred by statute, the corporation is not liable, whether its officers directed its performance, or it was done without any express direction or command." This expresses the rule approved by this court, as, indeed, by all the courts that have given the subject careful consideration, and by Judge Dillon, who thus states the rule: "There can be no corporate liability when the act complained of is one in no sense authorized by the charter, or constituent act of the corporation, or some valid legislative enactment applicable to it." 2 Dillon Mun. Corp. (3d ed.), section 969; *Cummins* v. *City of Seymour*, 79 Ind. 491, see auth. p. 497; S. C., 41 Am. R. 618. It is not essential, however, that the act be specially authorized; it is sufficient if it be within the general scope of the powers conferred upon the municipality. 2 Dillon Mun. Corp. (3d ed.), section 971. We think that the acts which caused the injury to the appellant's property were committed by persons employed by the city while engaged in the performance of a work within the general powers of the city of Richmond.

The appellee invokes the protection of the doctrine, that a municipal corporation is not responsible for the acts of an independent contractor, but it can not be here used as a shield. It is, no doubt, a general rule of wide and beneficial operation, but it can not prevail in cases where there is an express contract, as there is here, to pay the property-owner all damages that he may sustain. It needs no argument to prove that the rule can not operate to the prejudice of the owner of property who conveys the corporation an interest in his property in consideration of the agreement of the corporate officers to protect him against all loss or injury. In such a case the contractor employed by the city can not be justly said to

be an independent contractor. It would be strange, indeed,, if a person, artificial or natural, could secure a right to construct a public work upon the land of another under a contract to protect the owner against loss or injury from the work and the manner of its performance, and yet escape liability on the ground that the work was done by an independent contractor. It would be a reproach to the law if it permitted a municipal corporation to obtain access to private property under an agreement to protect the owner from injury, and still allow it to evade performance of its contract upon the·pretext that the work was done by an independent contractor to whom it had been awarded. In such a case the contractor as to the property is the agent or servant of the. city, and it is liable for his negligence. *Cummins* v. *City of Seymour, supra.*

The city could not escape the duty it owed to the appellant even if it were true, as contended, that the expense of constructing the sewer must be borne by the property-owners. of the locality. Damages resulting from injuries inflicted by the agents, contractors, or servants of the city, are not a part of the expense of constructing the sewer.

It is true that a contract to indemnify a person against an illegal act is beyond the power of a municipal corporation; but a contract binding a city to cause the performance of work to be done in a proper and lawful manner is not such a. contract. It is, indeed, perfectly well settled that a city is liable without an express contract if it causes a public work to be done in an unskilful and negligent manner. *Weis* v. *City of Madison,* 75 Ind. 241, and auth. cited p. 250; S. C.,. 39 Am. R. 135.

Counsel give a much wider scope to the doctrine of *ultra. vires* than the authorities warrant. A contract is only *ultra vires* when, as Judge Dillon says, it is " wholly outside of the legal powers of the corporation." 2 Dillon Mun. Corp. (3d ed.),. section 935. The contract before us is not wholly outside of the legal powers of the city of Richmond, and the city.

can not escape liability on the ground that the contract is *ultra vires.*

We adhere to the rule often declared that a complaint must proceed on a definite theory and be good on that theory. *City of Logansport* v. *Uhl,* 99 Ind. 531, p. 539 (50 Am. 109); *Sims* v. *Smith,* 99 Ind. 469, see p. 477 (50 Am. R. 99); *Cottrell* v. *Ætna L. Ins. Co.,* 97 Ind. 311, p. 313; *Western Union Tel. Co.* v. *Reed,* 96 Ind. 195; *Western Union Tel. Co.* v. *Young,* 93 Ind. 118; *Mescall* v. *Tully,* 91 Ind. 96, and auth. cited.

But we are satisfied that the complaint before us does not violate this rule of pleading. We regard it as setting forth the contract for the purpose of showing that the matter was one in which the city had power to act, and as showing, also, an agreement, in consideration of the cession of the interest in appellee's land, to protect her against all loss from the negligent or tortious acts of the persons employed by the city to construct the work, but that the real grievance is the tort committed in doing the work in a negligent and tortious manner.

The complaint avers that the injuries suffered were done to the property of Hannah Leeds, the plaintiff, and she, therefore, was the proper plaintiff. The fact that her husband joined with her in executing the contract does not make him a necessary party, for he is not the real party in interest. The party who owns the property injured by the negligence of another is the one who should bring the action. It is true that the complaint avers that her husband had an interest in the property as a manager for their joint benefit, but, taking all the allegations of the complaint together, it must be held that the husband was simply the agent and the wife the owner of the property injured.

The husband and wife were, as the complaint avers, the lessees of the real estate, but the property placed on it and injured by the wrongful act of the city was the property of the wife, and, as it is for the injuries to this property that the action was brought, she is the proper plaintiff. We suppose

it to be clear that two persons may have an interest in the leasehold estate, and one of them to be the sole owner of the property placed on the demised premises, and this is such a case.

Judgment reversed, with instructions to overrule the demurrer to the complaint.

