The City of Logansport *v.* Dykeman *et al.*

No. 13,666.

THE CITY OF LOGANSPORT *v.* DYKEMAN ET AL.

MUNICIPAL CORPORATION.—*City.—Contract.—Complaint.—General Averment of Contract.—Presumption.*—In an action against a city for services rendered in securing the settlement of its indebtedness, where there is an averment in the complaint that such city entered into a contract with the plaintiff, whereby the latter undertook and agreed, in consideration, etc., it will be presumed that whatever was necessary to be done by the common council, in respect to its records in relation to entering into such contract, was properly done; and no additional averment as to the manner of executing the contract is necessary.

SAME.—*Contract for Service.—Ordinance, Resolution or Writing not Necessary.* —In the transaction of mere matters of business, such as the purchase of goods necessary for the welfare of a municipal corporation, or the employment of persons or agencies to perform service for or protect the interests of the municipality, a formal ordinance, by-law or resolution is not necessary, nor is it essential that contracts of that character be in writing.

SAME.—*Contract with Attorney.—Acceptance of Service.—Estoppel.*—Where the common council of a city, properly convened, enters into a contract with an attorney, or where an attorney is employed through the agency of a committee or other authorized person, and has performed services of which the municipality has accepted the benefit, it may not afterwards object that the contract was not in writing, or that the vote of the council, on the question of employment, does not appear upon its records.

SAME.—*Contracts within Scope of Corporate Power.—City Bound Same as Individual.*—In respect to contracts which are within the ordinary corporate power of a city, and in relation to which no statutory requirements are laid down, or mode of procedure prescribed, such city will be bound by its contracts, and will be affected by the principles of ratification, in the same manner as an individual.

SAME.—*Bound by Implied Contracts.—Evidence.*—A municipal corporation will be bound by implied contracts or agreements to pay for services performed for it at its request, relating to matters within the scope of its powers, and such implied agreements may be deduced by inference from authorized corporate acts, without either a vote or writing.

SAME.—*City Indebtedness.—Constitutional Limit.—Constitutional Law.— Contract for Service Creating Additional Debt.*—Although the debt of a city may be actually or nominally up to the constitutional limit, the provi-

sions of article 13 of the Constitution will not operate to invalidate a contract made by its common council, agreeing to pay an attorney for services to be rendered in compromising or contesting any part of such indebtedness.

PARTIES.—*Abatement.*—*Party Interested Made Defendant to Answer to Interest.*—It affords no ground for the abatement of an action, nor in bar thereof, that a party really or nominally interested is made a defendant to answer to his interest instead of suing as plaintiff.

EVIDENCE.—*City.*—*Report of Committee.*—*Admission.*—In an action against a city to recover on a contract for professional services, the report of a committee of the common council, on the subject of the performance of such contract, which is in the nature of an admission that the council had notice of the contract, and that the plaintiff was proceeding under it, is admissible in evidence.

PRACTICE.—*Instruction.*—*Modification of by Court.*—The court may modify instructions asked, even after indicating, according to the requirement of the statute, what instructions would be given and what refused.

From the Cass Circuit Court.

*D. H. Chase* and *Q. A. Myers,* for appellant.

*D. C. Justice* and *D. P. Baldwin,* for appellees.

MITCHELL, J.—This was a suit brought by David D. Dykeman and George C. Taber against the City of Logansport to recover the amount which, it is alleged, the city agreed to pay the plaintiffs for the services of the appellee Dykeman in effecting a compromise and settlement of a large outstanding bonded indebtedness against the city in the year 1885.

William T. Wilson, a partner in business with the plaintiffs, was made a party defendant, to answer, it being alleged in the complaint that he had no interest in the claim against the city, he having assigned or surrendered his interest therein to the plaintiffs.

It is averred that the Ætna Insurance Company, of Hartford, Connecticut, held bonds theretofore issued by the city of Logansport, amounting to $80,000 principal and $61,000 of accumulated and overdue interest. Suit had been commenced and was then pending against the city to enforce payment of the bonds and interest, amounting to $141,000.

Thereupon, on the 4th day of February, 1885, the city of Logansport, as it is alleged, entered into a contract with the plaintiff Dykeman, by the terms of which the latter undertook and agreed to effect a compromise, and settle with the holders of the bonds and coupons, and procure the indebtedness to be cancelled and surrendered up to the city upon such terms as might be agreed upon by the common council of the city and the holders, for which services the city promised and agreed to pay him 5 per cent. of the amount of the reduction which he might secure from the principal and interest of the bonds and coupons.

It was further provided that in case the plaintiff should fail to secure a compromise and reduction satisfactory to the common council of the city, he was to receive no compensation for his services except the sum of one hundred dollars, which was to be paid toward his expenses.

It is averred that he entered upon the performance of his contract, that the city paid him one hundred dollars out of its treasury for his expenses, and that he secured a compromise which was acceptable to the city, the result of the settlement being that the bonds and interest coupons above mentioned were surrendered up and cancelled upon the payment by the city of $95,000, thus saving the sum of $46,000.

The plaintiffs claim that the city became indebted to them in the sum of $2,300, that amount being 5 per cent. of the reduction secured by the services of the appellee Dykeman.

The complaint was held good on demurrer, and this ruling is one of the grounds upon which error is predicated.

The argument on behalf of the appellant is based upon the proposition "that a common council of a city can only enter into a contract for personal or professional services by a record." Hence it is contended, since it does not appear by averment in the complaint in the present case that the contract which the plaintiffs rely upon was entered of record and adopted by taking the yeas and nays, as is required upon the

adoption of a by-law, ordinance or resolution, that it afforded no right of action, and that the court below erred in not sustaining the demurrer to the complaint.

The averment in the complaint in that regard is general, and to the effect that, on the 4th day of February, 1885, the city of Logansport entered into a contract with the plaintiffs whereby the appellee Dykeman undertook and agreed that in consideration, etc.

Under this averment it must be presumed that whatever was necessary to be done by the common council, in respect to its records in relation to entering into the contract relied on by the plaintiffs, was properly done. *Over* v. *City of Greenfield*, 107 Ind. 231.

It is quite true that section 3099, R. S. 1881, declares that "On the passage or adoption of any by-law, ordinance, or resolution, the yeas and nays shall be taken, and entered on the record." This is to the end that in acting upon matters of a *quasi* judicial, or of a legislative character, in which the public is concerned, or which may affect the persons or property of citizens, each member of the common council shall be obliged to assume his full measure of responsibility by putting himself upon record, and thus indicating his attitude in regard to the matter in question. *Steckert* v. *City of East Saginaw*, 22 Mich. 104.

It is a mistake to suppose, however, that in the transaction of mere matters of business, such as the purchase of goods necessary for the welfare of the corporation, or the employment of persons or agencies to perform service for, or to protect the interests of, the municipality, a formal ordinance, by-law or resolution must be adopted, and the yeas and nays taken and entered of record. Cities are authorized, upon conditions prescribed, to issue bonds, to incur liabilities, to purchase and own property, and to employ various agencies in conducting the business affairs which concern the municipality. *City of Indianapolis* v. *Indianapolis Gas-Light*,

*etc., Co.,* 66 Ind. 396; *Leeds* v. *City of Richmond,* 102 Ind. 372.

As a consequence, they have the incidental power to compromise and adjust disputed claims, and to employ agents or attorneys to accomplish that end. The statute does not prescribe the method by which contracts of that character are to be made, nor that such contracts must be in writing. The method of adopting, and the form of such contracts, are, therefore, matters within the discretion of the council. Of course the proper and business-like way would require that the employment should appear upon the record of the proceedings of the common council, but the record is not necessarily the contract, although it may afford the most satisfactory evidence of the fact that a contract was made. Where, however, a common council, properly convened, enters into a contract with an attorney, or where an attorney is employed through the agency of a committee or other authorized person, and has performed services of which the municipality has accepted the benefit, it will be too late, when he asks to be compensated for his services according to the agreement, to object that the contract was not in writing, or that the vote of the council does not appear upon the record of its proceedings. In respect to such contracts, a municipal corporation may be bound by the acts of its properly authorized agents, substantially as a natural person. *Bank of Columbia* v. *Patterson,* 7 Cranch, 299 ; *Township of Norway* v. *Township of Clear Lake,* 11 Iowa, 506.

Cases involving contracts for street improvements, and those in which certain precedent steps are required to be taken before a common council can acquire jurisdiction to contract at all, or where the statute requires that the contract be made in a certain form, or in pursuance of a certain mode, bear no analogy to the present case. In such cases the common council exercise a special statutory power in relation to the contract, and where a mode of procedure is prescribed, and the conditions and form of the contract are matters of

statutory regulation, both the mode of procedure and form of the contract must be substantially observed. *City of Logansport* v. *Humphrey*, 84 Ind. 467 ; *Driftwood, etc., Turnpike Co.* v. *Board, etc.*, 72 Ind. 226.

On the other hand, where the contract is one which the corporation has the incidental power to make, independently of any statute, in order that it may execute powers expressly conferred, and carry out the purposes of its being, the rule that such contracts are not void merely because there is no written evidence of them, or because of the absence of some mere formality, is now too firmly settled to be shaken. *Ross* v. *City of Madison*, 1 Ind. 281 (48 Am. Dec. 361) ; *School Town of Princeton* v. *Gebhart*, 61 Ind. 187 ; *State, ex rel.*, v. *Hauser*, 63 Ind. 155 (182) ; *McCabe* v. *Board, etc.*, 46 Ind. 380 ; *Leeds* v. *City of Richmond, supra ; City of Terre Haute* v. *Terre Haute Water-Works Co.*, 94 Ind. 305 ; *White* v. *State*, 69 Ind. 273 ; *City of Logansport* v. *Crockett*, 64 Ind. 319 ; *Langdon* v. *Town of Castleton*, 30 Vt. 285 ; 1 Dillon Munic. Corp., sections 479, 463.

A broad distinction exists, and must be kept in view, between those cases in which a municipality, or some one through its authority, seeks to avail itself of the contract or proceedings of a common council in order to impose a burden upon the property of another, or to affect the rights of others, and those in which the neglect or omission of the common council, or other officer of a city, to observe some mere matter of form, is interposed in order to deprive a person of compensation for services rendered for the municipality, in respect to a matter in which no formality whatever is required. 1 Dillon Munic. Corp., section 449.

In respect to contracts which are within the ordinary corporate powers of a city, and in relation to which no statutory requirements are laid down, or mode of procedure prescribed, a municipal corporation will be bound by its contracts, and will be affected by the principles of ratification, in the same manner as an individual.

If the contract could have been made in the first instance without any particular or prescribed conditions or formalities, it being within the corporate authority and a 'necessary incident to enable it to execute its functions, it may be ratified in like manner. *Cullen* v. *Town of Carthage*, 103 Ind. 196 (53 Am. R. 504); 1 Dillon Munic. Corp., sections 463, 464; *Bass Foundry and Machine Works* v. *Board, etc.*, 115 Ind. 234; *Corporation of Bluffton* v. *Studabaker*, 106 Ind. 129.

So, also, in respect to services performed for a corporation at its request, if the services relate to a matter within the scope of its powers, the corporation will be bound by an implied contract or agreement to pay, and such implied agreement may " be deduced by inference from authorized corporate acts, without either a vote, or deed, or writing." 1 Dillon Munic. Corp., section 459.

The court committed no error in overruling the demurrer to the complaint.

Several paragraphs of the answer presented defences arising under article 13 of the Constitution, relating to the limitation upon municipal indebtedness. As has already been seen, the complaint shows that the result of the contract with the plaintiffs was to reduce the corporate indebtedness from $141,000 to $95,000.

The answers, in effect, confess these averments in the complaint, but say that the contract to pay 5 per cent. is within the constitutional inhibition, because the city was already indebted in an amount beyond the limit of the Constitution.

The contract with the plaintiffs did not contemplate the creation of a new or additional debt. It was a contract for services to be rendered in securing the reduction of an existing debt. Certainly it never was intended that a municipality, whose indebtedness was actually or nominally up to the constitutional limit, might not contract for the services of an agent or attorney to contest the validity of the whole or any part of its indebtedness, and secure a reduction of the

amount thereof.  To give the Constitution such a construction would effectually tie the hands of municipalities, so to speak, and disable them from entering into any arrangement for refunding or reducing the amount of their pre-existing indebtedness by new promises to pay, or by any arrangement looking to a compromise.  *Powell* v. *City of Madison*, 107 Ind. 106, and cases cited.

There are some other questions discussed of minor importance relating to questions raised by other answers, some of which are treated as pleas in abatement.  It is quite sufficient to say that after an attentive consideration of the argument in appellant's behalf, we have discovered no error in the rulings of the court in that connection.  The facts pleaded in abatement were not matter which went to abate the suit. They went to the merits.  *Morningstar* v. *Cunningham*, 110 Ind. 328.

It affords no ground for the abatement of an action that a party really or nominally interested is made a defendant to answer to his interest, instead of suing as a plaintiff.  *Durham* v. *Hall*, 67 Ind. 123.

In either case his rights under the contract would be barred by the event of the suit.  Nor were the facts pleaded sufficient as an answer in bar.  It was no cause of concern to the city if the defendant Wilson was content that it should be adjudged that he had no interest in the contract.

Some questions presented by the motion for a new trial, such as the overruling of the appellant's motion for a continuance on account of the absence of Mr. Tomlinson, and the objection that certain of the jurors were selected from the by-standers instead of being regularly drawn by the jury commissioners, have been duly considered.  In respect to those matters the court acted within its discretion, and there was no error in its rulings.  *Deig* v. *Morehead*, 110 Ind. 451 ; *Heyl* v. *State*, 109 Ind. 589.

It is contended that the motion for a new trial should

have been sustained because the verdict of the jury is contrary to law and contrary to the evidence.

This contention is predicated upon the proposition that the common council of the city was not lawfully convened at the time the contract was entered into with the plaintiffs. Without attempting to detail the facts in that connection, it may be conceded, for the purposes of this case, that the meeting of the common council at the time referred to was informal. It is, however, beyond dispute, that at a meeting attended by eight of the ten members of the common council, presided over by the mayor, and in the presence of the city attorney, the contract relied on was made.

The evidence fully justifies the conclusion, that after the contract was thus entered into the plaintiff Dykeman proceeded to consummate what he had undertaken on behalf of the city, and that the mayor, city attorney and common council all knew that he was acting for the city, in pursuance of the contract thus made.

The council met again and again, every member thereof having complete knowledge of what had been agreed upon, and of what was being done under the contract. So far as the record discloses, there was not one word of dissent, nor any attempt at any subsequent meeting to abrogate or set aside the action taken at the informal meeting of the mayor and council. The one hundred dollars which the council agreed to pay toward expenses had been paid by the city treasurer, and the payment regularly reported through the proper committee to the common council. This report appears to have been regularly confirmed. Finally, after months of negotiation and effort, a compromise was effected by the plaintiff Dykeman, which was accepted by the common council of the city. The city, as a result, received the surrender of its bonds and interest coupons to the amount of $141,000, and, after the consummation of the whole matter, it now seeks to go back and question the regularity of

the meeting at which the contract, under which the plaintiffs performed the service, was made.

With all the diligence and laborious research of counsel, they have presented no authority which would support a holding that the contract, even though not regularly made in the beginning, had not been so ratified and adopted by the subsequent acquiescence and affirmative conduct of the common council as to authorize a recovery. We do not for a moment doubt the proposition, so abundantly supported by appellant's counsel, that a municipal corporation can not be bound by the ratification of a contract which it had no power to make, or which had been made in disregard of a mode prescribed by the statute.

The principles of ratification can not be invoked to help out or enlarge the power of a corporation to make contracts, or to cure or supply defects, in case the prescribed mode of contracting has been disregarded, but we have already pointed out that the present case is within the rule which applies the principles of ratification to the contracts of municipal corporations, the same as to those of individuals.

The common council having assumed to contract concerning a business matter which was entirely within its discretion, both as to the time and mode of contracting, and having acquiesced in the performance of the contract, and accepted the results of the service performed under it, they must now be held to have ratified the original contract, so as to have made it as binding as though it had been adopted at the outset in a manner entirely beyond question.

The case is not distinguishable in principle from *Sullivan* v. *School Dist. No. 39*, 18 Pac. Rep. 287, in which it was held by the Supreme Court of the State of Kansas, as stated in the head-note, that a contract for building a school-house, void because made by only one member of the school board, may afterwards be ratified and made binding upon the district by the full school board. See, also, *Albany City Nat'l Bank* v. *City of Albany*, 92 N. Y. 363.

The next question relates to the ruling of the court in admitting in evidence the report made to the common council by the claims committee, to whom was referred the claim of the plaintiff for compensation under the contract.

This report purports to state the fact and manner of the employment of Mr. Dykeman, the various steps taken by him in bringing about a settlement, and it sets out copies of letters and telegrams sent and received by him, all of which were laid before the mayor and various committees of the council during the progress of his negotiations for a compromise. It also recites the terms of the final compromise agreed upon, and it concludes with an appended statement by the city attorney, to the effect that in his opinion the services of Mr. Dykeman were instrumental in bringing about the settlement, and that he ought to be paid according to the agreement. The report seems to have been objected to as an entirety.

It was admitted upon the theory that it was in the nature of an authentic declaration, tending to show that the common council had notice of the contract which had been entered into with the plaintiffs, and that the mayor and council were advised from time to time, by the reports and correspondence which were laid before them, of the progress of events under the contract, and that the agreement entered into had, therefore, been acquiesced in and ratified by the knowledge and conduct of the common council.

To the extent that the report of the committee was in the nature of an admission that the common council had notice of the contract, and that the appellee Dykeman was proceeding under it, it was properly admitted in evidence. *City of Delphi* v. *Lowery*, 74 Ind. 520 (39 Am. R. 98).

It must have been, in any event, harmless as evidence, for the reason that the matters therein recited do not seem to have been in serious dispute. The opinion and recommendation of the city attorney were not admissible in evidence for any purpose, but as we have been unable to discover any

separate objection or motion addressed to that feature of the report, no question in that regard is presented by the general objection to the report. Counsel for the city mistake the condition of the record, in assuming and asserting that it shows a separate objection to the opinion of the city attorney.

Some questions are made in relation to the giving and refusing certain instructions, but these have been incidentally determined in consonance with the ruling of the court by what has been said upon the sufficiency of the complaint and the subject of ratification. They need not be adverted to again.

The court very clearly had the right to modify the instructions asked, even after indicating, as the statute requires, what instructions would be given and what refused. It would be a travesty upon the administration of justice if a court was compelled to give an erroneous instruction, simply because it had acted incautiously in indicating what instructions would be given.

The evidence tends to sustain the verdict and findings of the jury.

While we have not separately stated each of the numerous questions made upon the briefs, we have examined them all.

We find no error. The judgment is affirmed, with costs.

Filed June 21, 1888; petition for a rehearing overruled Oct. 9, 1888.