Filed March 31, 1896.

---

No. 2,027.

## McQUEEN *v.* THE CITY OF ELKHART.

HIGHWAY.—*Street.— Sidewalk.— Snow and Ice.—Personal Injury.— Liability of City.*—The mere fact that snow falls on a sidewalk, melts, and subsequently freezes, making it slippery, does not render the city liable for an injury caused by slipping and falling thereon.
SAME.—*Sidewalk.— City Not An Insurer Against Accident. — Duty of City as to Its Sidewalks.*—Although cities are bound to maintain their sidewalks in a reasonably safe condition for the use of trav-

elers, it is not an insurer against accidents, and is not required to keep the sidewalks free from all irregularities and trifling defects.

SAME.—*Grade of Sidewalk.*—*Negligence.*—A city is not liable for an injury received upon one of its sidewalks merely because its officials adopt one grade in preference to another, or because sidewalks of a given standard are better or more perfect than that adopted.

EVIDENCE.    *Burden of Proof. — Personal Injury. — Defective Sidewalk.*—Plaintiff in an action for personal injuries caused by a defective sidewalk has the burden of proving that the walk was improperly graded or constructed, where he relies on such fact.

APPELLATE PROCEDURE.—*Presumption.*—*Contributory Negligence.— Personal Injuries.*—It will not be presumed on appeal that plaintiff in an action for personal injuries was free from contributory negligence, merely because the facts found do not show that she was guilty of such negligence.

SPECIAL FINDING.—*Contributory Negligence.*—*Personal Injuries.— Highway.*—A finding that plaintiff who sues for personal injuries caused by a defective sidewalk "walked with ordinary care and at her ordinary gait" is insufficient to show that she was free from contributory negligence.

From the Elkhart Circuit Court.

*H. C. Dodge,* for appellant.

*P. L. Turner,* for appellee.

Ross, J.— The appellant, who was the plaintiff below, ·sued to recover damages for personal injuries alleged to have been received by her from a fall on one of the streets of the city of Elkhart.    The cause was tried by the court, a special finding of facts made with conclusions of law thereon.    The exceptions reserved to the conclusions of law upon the facts found present the only questions for review on this appeal.

The facts found by the court, with the conclusions of law thereon, are as follows :

"1st.    The defendant is, and at the time of the filing of the complaint in this cause, and on the 25th day of December, 1892, was a municipal corporation, formed under the general laws of this State.

"2d.   That on the 25th day of December, 1892, defendant had two streets with sidewalks on both sides thereof, crossing each other at right angles, called Fourth and Marion streets, Fourth street running north and south, and Marion street running east and west.

"That in 1891 the defendant established the grade of said street at, and both ways from said street crossing, and cut said streets down between said sidewalks, twelve inches below what before that time had been the level surface of said sidewalks, but left the said sidewalk on the south side of Marion street, and west of the west line of Fourth street, and on the west side of Fourth street, and south from that point on the west side of Fourth street, at the original elevation, to-wit: Twelve inches higher than the street for the full width of said sidewalk, to-wit:   Eight feet.

"3d.   That across said Fourth street where the south line of Marion street crossed the same and continuing the sidewalk on the south side of Marion street, across Fourth street for the width of the sidewalk across Fourth street, said defendant built said side-walk as follows:   Commencing at the west side of Fourth street the width of said sidewalk on the west side of Fourth street, eight feet east on the old level, twelve inches higher than said street, then for the next eight feet east on an incline plane dipping to the east twelve inches of smooth surface, concrete walk for thirty-four feet east from that point on a level with Fourth street as graded the said established grade, then for the next eight feet elevated toward the east twelve inches, and from that point on a level with the starting point eight feet, making a whole width of Fourth street sixty-six feet.

"4th.   That on the night of the 24th of December, aforesaid, there was snow upon the said incline as else-

where on the streets of Elkhart; that a rain fell early in the evening of the 24th, aforesaid, and softened said snow into a soft snow or slush, so that people passing over said inclined place on said night left imprints of their feet in said soft snow or slush, making thereby little ridges from one-fourth to three-fourths of an inch high in different places of said incline, and that in such condition the weather turned cold on said night and before morning froze said slush into solid ice with said rough places thereon.

"5th.    That on the afternoon of December 25, 1892, the plaintiff who then lived west of Fourth street on the south side of Marion street, between the hours of three and four o'clock, left her home and walked eastwardly for the purpose of going over into the business portion of the city, to-wit, Elkhart, and walked with ordinary care and at her ordinary gait; that at said time it was snowing very rapidly and had fallen to such an extent that the depressions were lightly covered with snow, and so not visible; plaintiff knew, and had at other times before passed over said inclined plane, and knew where it was and that the sidewalk was covered with ice and snow, and that it was slippery; but plaintiff did not at this time see said depressions or unevenness of surface on account of the new snow, thereon, and then and there walked upon said incline, but at said time did not think of being upon the incline until at or about the middle thereof she stepped upon a piece of ice or elevation as aforesaid, from which her foot slipped, causing her then and there to fall down suddenly and hard upon her right limb and arm, greatly bruising and wounding each, causing her then and thereafter for the next six months serious pain, and from which she is very lame in her right limb, which by some means arising from said injury is slightly shorter than in its original condi-

tion, and causes her to wear three extra heel taps or heel plates on the heel of the right shoe in order to make that limb as long as it formerly was; plaintiff was fifty years old when this occurrence took place; plaintiff has been damaged by means of said injuries in the sum of$ 500.00.

"The defendant, prior to said fall, had made no effort to remove the ice from said incline where plaintiff fell; that said incline is the same inclined plane described in plaintiff's complaint at the same point where plaintiff received her injury. Plaintiff did not by her own fault contribute to said injury; said incline when free from ice and snow was and is not dangerous, but when covered as above found was somewhat dangerous to pedestrians when walking upon and over said incline.

"Conclusions of Law.

"Upon above facts the court finds as a conclusion of law that plaintiff has no cause of action."

Cities are in duty bound to maintain their streets and sidewalks in a reasonably safe condition for the use of travelers and pedestrians, so that those who use them in a proper manner, and while exercising ordinary care in such use, may not suffer injury therefrom. *Buscher* v. *City of Lafayette*, 8 Ind. App. 590; *Trout* v. *City of Elkhart*, 12 Ind. App. 343.

While it is the duty of a municipal corporation to exercise diligence and care to keep its streets and sidewalks in reasonably good condition and repair, it does not guarantee absolute safety, even to those who use them in a proper manner. In other words, it is not an insurer against accidents. For, as said by the court in the case of the *City of Indianapolis* v. *Cook*, 99 Ind. 10: "It is simply required to keep its streets and sidewalks in a reasonably safe condition for persons travel-

ing in the usual modes by day and night, and using ordinary care.    A man may stumble and fall anywhere, in a house or in a street, but, because he happens to fall in the street, it follows by no means that the city is responsible for the injury he receives."

To construct a street or sidewalk and maintain it free from all defects or irregularities, and in such condition that a traveler cannot possibly strike his foot, or slip and fall, is not only impracticable, but is absolutely impossible.    There are and must be more or less inequalities and defects in every street and sidewalk, and good engineering requires that they be built with certain grades and slopes.    These inequalities or slight defects, as well as the grades and slopes, make the streets and walks imperfect, and may cause the traveler either to stub his toe, or to slip and fall, and yet their existence, because necessary in one instance and in the other impossible to avoid, does not make the street or sidewalk unsafe in the sense that the city shall be liable for injury resulting therefrom.    So when it is said that it is the duty of a city to maintain its streets and sidewalks in a reasonably safe condition for use by the traveler, it is not meant that their surface shall be kept free from all irregularities or other trifling defects, but its duty is performed if it subjects the traveler in using them to no greater risks than are naturally attendant upon their use when free from unnecessary or unavoidable irregularities, defects or inequalities.    What irregularities or inequalities are unavoidable depends much upon the grade established, the material out of which the street or sidewalk is constructed as well as the location of the street or sidewalk itself.    If the location of a city is level it may be an easy matter to make the grades of its streets and sidewalks harmonious, but if its location is on the side of a hill, or where the ground is by nature

uneven, oftentimes it is impossible to construct streets or sidewalks except they slope to such a degree that at times it is almost impossible to use them with any degree of safety, even when using the utmost care and caution. Of course if a street or sidewalk was originally safe, and by the act of the city it is made unsafe, for instance by making excavations therein, or placing obstructions thereon, a liability attaches for injuries received, on account of such changed condition, by one who, while using it, was himself exercising ordinary care. The liability accrues by reason of the city's neglect to exercise skill and care in the performance of the work and not because the plan or grade adopted, or the kind of material used, was not the best or most feasible. If in making such improvements ordinary care and skill are used to the end that when completed they are reasonably safe, no liability attaches to the city. *Cummins* v. *City of Seymour,* 79 Ind. 491.

It is for the city to determine and adopt not only the grade for its streets and sidewalks but also when they should be improved and of what material the improvement shall be made. In this the city authorities act for and in the interest of the general public, regulating the time and the manner of the making, as well as the kind of material with which to make the improvements, according to the public needs. They are not compelled to adopt any particular plan or grade, to use any special kind of material or to make the improvement to conform to any given standard. The city is not amenable simply because its officials adopt one plan or grade in preference to another, or select one kind of material rather than another, or because streets and sidewalks of a given standard are more perfect and better than that adopted. As heretofore stated, the improvements, as to the grade to be adopted, the material to be used

as well as the manner of its construction, depend very much upon the general situation of the city and more especially to the location of the street to be improved. And even though it were possible to make all of the streets of a city level and upon a uniform grade, it cannot always be done. The owners of property abutting on a street have certain rights which the public convenience cannot destroy. But the question as to whether or not public necessity demands that an improvement be made, or the kind and nature of it as best suited to such demands, is exclusively for the municipal authorities, and with which the courts have no concern. *Leeds* v. *City of Richmond*, 102 Ind. 372.

If the appellee is to be held liable under the facts in this case, it must be upon one of two theories, namely: (1) Either that it had no right to establish a grade on Marion street with the sidewalk twelve inches higher than the street, which at its intersection with Fourth street must terminate abruptly with a perpendicular drop of twelve inches or necessitated a decline, more or less gradual, down to said street, or, (2) Because the appellee failed to remove the snow and ice from said sidewalk.

Counsel for appellant in argument says: "The case in a nutshell is this, that it must be that a city is liable for the construction of a sidewalk in such a manner as to be dangerous when covered with ice, not from being merely slippery as all walks are when covered with ice, but being upon an incline, so that when stepping upon the ice on the inclined plane the footing gives way and the pedestrian is precipitated to the ground and injured."

There is nothing in the finding to show that in adopting a grade for its streets and sidewalks and a plan for their improvement, the appellee was negligent. So far as the facts disclose the streets and sidewalks in

question were improved under a proper grade and in a manner and of such materials as best suited the public demands, and so as to insure the greatest safety in their use. Had the appellee been negligent either in devising and adopting a grade for its streets and sidewalks, or in the manner of constructing the sidewalk in bringing it at its intersection with Fourth street down to the grade of that street, a different question would be before us. But the facts found are not sufficient to warrant the court in inferring either that the appellee was negligent in adopting the grade or in making the improvement. If the walk was improperly graded or constructed, that was a fact necessary to be established; for if it was properly graded and constructed, the mere fact of snow falling thereon and melting and then freezing and making it slippery would not create a liability on appellee's part for an injury to one slipping and falling thereon. The city is not answerable for the fall of snow, and we know of no holding in this State which imposes upon a city the duty of removing from its streets and sidewalks all snow that falls or ice that forms thereon.

Again, the facts found are not sufficient to warrant the court in drawing the inference that the appellant was not guilty of negligence contributing to her injury.

The burden rested upon the appellant to prove that she was free from negligence contributing to her injury. No inference arises in her favor that because the facts found do not show that she was guilty of negligence contributing to her injury, she was free from contributory negligence. To hold that such an inference arises when there are no facts found tending to show either that she was or was not guilty of contributory negligence, would be to supply by mere "presumption that which an unbending rule of law requires should be

established by proof." *Indiana, etc., R. W. Co.* v. *Greene, Admx.*, 106 Ind. 279.

This question was thoroughly considered and fully discussed in the recent cases of *City of Huntingburgh* v. *First*, 43 N. E. Rep. 17, and *Gaston* v. *Bailey*, 14 Ind. App. 581.

And the finding that the appellant "walked with ordinary care and at her ordinary gait," is not sufficient of itself, even if considered as proper findings, to warrant the court in holding that she was free from contributory negligence; for, as said by Gavin, C. J.: "It is, however, in such cases, essential that the jury should set out in the verdict (or the court in its special finding) both the primary and the final inferential facts in order that the court may determine whether or not different conclusions may reasonably be drawn from the primary facts." *Walkup* v. *May*, 9 Ind. App. 409.

The case of *Lyon* v. *City of Logansport*, 9 Ind. App. 21, which counsel for appellant insist is analogous to and decisive of the case at bar, was an action brought by Lyon to recover damages for injuries received by falling on an iron gutter crossing which had become so worn that it was smooth and slippery, and snow having fallen upon it, he not knowing of its smooth and slippery condition, in attempting to cross over it, slipped and fell and was injured. This court held that under the facts found in that case the city was liable for the reason solely that it was negligent in permitting the crossing to become so worn, smooth and slippery as to be unsafe for use. There is no analogy between the cases, and there is nothing in the holding in that case to sustain the appellant's contention here.

The legal conclusion drawn by the court from the facts found was correct.

The judgment of the court below is affirmed.

Filed March 31, 1896.

NOTE.—As to the liability of municipal corporations for ice on streets and sidewalks, see note to *Hausmann* v. *Madison* (Wis.), 21 L. R. A. 263.