We can not say that the finding was not sustained by sufficient evidence, or that it was contrary to law.

The judgment is affirmed, with costs.

Filed June 26, 1891.

———————————

No. 55.

## HASSELMAN v. THE JAPANESE DEVELOPMENT COMPANY.

CORPORATION.—*In what Name May Sue.*—A contract by a corporation in a name different from its true corporate name may be enforced by either party where no question is raised disputing the identity of the corporation. The rules of law relating to the names of corporations are the same as those applicable to individuals.

SAME.—*Insolvent.*—*Maintenance of Corporate Existence.*—*Receiver.*—An insolvent corporation, in the hands of a trustee or receiver, maintains its existence and preserves its functions, at least as far as may be necessary to fully wind up its affairs.

SAME.—*Suit by Insolvent Corporation.*—*Duty of Receiver in Reference to.*—*Assignment of Claim Sued Upon.*—*Suit, How Prosecuted.*—Where a suit has

Hasselman *v.* The Japanese Development Company.

been instituted by a corporation in its corporate name, and afterwards the corporation becomes insolvent and a receiver is appointed, it is the duty of the receiver to continue the prosecution of the suit in the name of the corporation, in the absence of express authority from the court appointing him, to maintain the suit in his own name.   After the sale and assignment of the demand sued upon, and the transfer thereof by the receiver, it was proper for the court to permit the suit to be carried on, as it was originally begun, for the benefit of the party to whom the claim was assigned.   See section 271, R. S. 1881.

GUARANTY.—*Contract of.— What Constitutes.—Notice of Acceptance.—Necessity of.—*Where the plaintiff requested of the defendant by telegram and letter an absolute assumption of the payment of the debt of another, and the defendant telegraphed in reply, "Fill Mordaunt's order.  I will guarantee payment within 30 days," the engagement of the defendant was that of a guarantor, and he was entitled to notice of the acceptance of his proposition before he was bound thereby.   Without the notice of acceptance the contract between the parties was not complete, as the request of the plaintiff was not acceded to by the defendant, but a new and different proposition was made by him.

SAME—*Notice of Acceptance.—Special Finding.—Presumption.—Silence as to Notice.—*Notice of the acceptance of a proposition of guaranty is a question of fact, to be found by the jury or court, the same as any other issuable fact.   Where the trial court, in its special finding, fails to make any finding upon the question of notice, but simply sets forth the evidence upon that question, the items of evidence will be disregarded, and the Appellate Court will presume that no such notice was given.

PLEADING.—*Complaint.— Must Proceed Upon Definite Theory.— Averments, how Construed.—*Every complaint must proceed upon some definite theory, and the averments of a complaint or answer must be construed most strongly against the pleader upon all doubtful averments.

From the Marion Superior Court.

A. C. *Harris,* for appellant.

A. C. *Ayres, E. A. Brown* and *L. M. Harvey,* for appellee.

CRUMPACKER, J.—The appellee, an Illinois corporation engaged in the mercantile business in the city of Chicago, filed its complaint against the appellant in the Marion Superior Court, in two paragraphs.

The first alleges that the appellant is indebted to the appellee, on account, for goods, wares, and merchandise sold and delivered to him at his special instance and request, by

the appellee, to the amount and value of $275, which was due and unpaid, and that a bill of particulars was filed with and made part of the complaint.

In the second paragraph the appellee declares that on the 22d day of March, 1886, it sold and delivered to one F. S. Morduant, at Chicago, Illinois, goods, wares, and merchandise, to the amount, and of the value of $382.25, at the special instance and request of said Morduant and the appellant, a bill of particulars of which was filed with and made part of the complaint; that such goods, etc., to the amount of $275 were so sold and delivered to said Morduant pursuant to and upon the faith of the written promise and agreement of the appellant guaranteeing the payment of said amount within thirty days from the 18th day of March, 1886, which said written promise was addressed to the appellee in the name and style of "Nee Ban," and was in words and figures as follows, to wit:

"3-18-86.

"Fill Morduant's order. I will guarantee payment within thirty days.                    O. H. HASSELMAN."

It is further alleged that said Nee Ban was the appellee's agent, and the manager of its business at Chicago, Illinois; that a demand for the payment of the claim had been made upon Morduant and the appellant, and payment was refused, and that Morduant was insolvent.

The appellant answered in three paragraphs, the first and second being general denial and payment, and in the third he admitted the guaranty, as alleged in the second paragraph of complaint, but alleged, by way of avoidance, that the appellee sold to Morduant $107.25 in excess of the guaranty, and took an assignment of, and subsequently collected certain moneys owing to Morduant at Cincinnati, Ohio, for the amount of such excess; that this was done without the appellant's knowledge or consent, and that he (appellant) had obtained and held a prior assignment of the claims due to Morduant at Cincinnati, so taken and collected by appellee.

A general denial was filed to the answer and the cause was submitted to the court for trial without a jury.

At the request of both parties, properly made, the court found the facts specially, and stated its conclusions of law thereon, and gave judgment for the appellee.

The appellant excepted to the conclusions of law, appealed to the Marion Superior Court, in general term, upon such exceptions, and the judgment of the court, in special term, was affirmed. This appeal brings before us for review the judgment of the court, in general term, affirming the judgment in special term. No exceptions were taken to any of the proceedings, except the conclusions of law.

The special finding discloses the following facts somewhat abridged :

*First.* During the months of March and April, 1886, the appellee was an Illinois corporation, engaged in business in the line of theatrical supplies at the city of Chicago. Its corporate name was " The Japanese Development Company," but it was popularly known by the name of " Nee Ban," in which name it advertised its business extensively. " Nee Ban " is the Japanese term for " No. 2."

*Second.* One Fred S. Morduant was the proprietor and manager of a theatrical company called " The Juvenile Japanese Mikado Company," and was largely indebted to the appellant for printing and money advanced. He was in the city of Chicago with his troupe and needed an outfit to enable him to give entertainments, and on the 17th day of March, 1886, he applied to the appellee for the purchase of such outfit, and procured the appellee to enter into correspondence with the appellant with the view of obtaining from him a guaranty of the payment for such goods as Morduant might order.

*Third.* The negotiation between the appellee and appellant consisted wholly of telegrams and letters, which are copied at length in the special finding, and are as follows, barring the headings :

Hasselman v. The Japanese Development Company.

"1. Telegram:         CHICAGO, March, 17th, 1886.
"O. H. Hasselman, Indianapolis, Ind.:

"Send us order, under your signature, authorizing us to collect from you for Morduant's order on completion. Amount about two hundred and seventy dollars."

"2. Letter:         CHICAGO, March 17th, 1886.
"O. H. Hasselman, Indianapolis, Ind.:

"DEAR SIR: Confirming our telegram to-day, 'Send us an order, under your signature, authorizing us to collect from you for Morduant's order on completion, amount about two hundred and seventy dollars.' The full order as left by Mr. Morduant to-day will amount, as nearly as we can estimate, to $275.         Yours truly,     NEE BAN."

"3. Telegram:

"ST. LOUIS, 18th.    Received Chicago, 18th.

"To NEE BAN: Fill Morduant's order. I will guarantee payment within thirty days.    O. H. HASSELMAN."

"4. Telegram:         CHICAGO, March 25th, 1886.
"O. H. Hasselman, Indianapolis, Ind.:

"Morduant orders one hundred dollars more. Will you guarantee on same terms? Wire reply.     NEE BAN."

"5. Letter:         CHICAGO, March 25th, 1886.
"Mr. O. H. Hasselman, Indianapolis, Ind.:

"DEAR SIR: We beg to confirm our telegram of this day. 'Morduant orders one hundred dollars more. Will you guarantee on same terms?'

"Yours respectfully,         NEE BAN."

"6. Telegram:         INDIANAPOLIS, IND., 3-25, 1886.
"To Nee Ban, cor. State and Jackson Streets, Chicago:

"Will not assume payment of any more.

"O. H. HASSELMAN."

"7. Telegram:         CHICAGO, March 26th, 1886.
"O. H. Hasselman, Indianapolis, Ind.:

"Morduant has exceeded guaranty one hundred and seven

dollars. He has telegraphed you. You must guarantee this amount in addition or we will attach at once. Answer.

"NEE BAN."

"8. Telegram: INDIANAPOLIS, March 26th, 1886. "To Nee Ban, Esq., Chicago, Ill.:

"DEAR SIR: $275 is the full limit of amount of goods we will take and pay for upon our account. Respectfully,

"O. H. HASSELMAN.

"9. Letter: INDIANAPOLIS, March 26th, 1886. "To Nee Ban, cor. State and Jackson Streets, Chicago, Ill.:

"DEAR SIR: In answer to yours of yesterday, received this morning, confirming your telegram of yesterday, we answered last night by wire, saying we would not assume to pay any more than $275.

"We also telegraphed Mr. Morduant, advising him to cancel the order beyond $275. Yours,

"O. H. HASSELMAN."

These were all the letters and telegrams that passed between the parties, and they were all duly received in the ordinary course of transmission and delivery, and they fix appellant's liability in this action, if any liability is fixed, upon him.

*Fourth.* The goods sold to Morduant were delivered to him, beginning on the 16th of March, 1886, and from that time on up to the 25th of that month, when his orders aggregated $382.25, and upon receiving notice that the appellant would not guarantee the payment of the whole sum, the appellee commenced some kind of legal proceeding in some court in the city of Chicago against Morduant. The nature of such proceeding and the amount claimed were not disclosed. Such proceeding was dismissed, and the matter compromised by Morduant giving to the appellee an order for $107.25 upon the box-office receipts at Cincinnati, at which place Morduant's company was to perform within a few days from that time, which order the appellee collected in full from such receipts. The appellant had an order from Mor-

duant covering the entire box-office receipts at Cincinnati, antedating that given to appellee, but the appellee had no knowledge of such order.

*Fifth.* The appellant had no notice of the acceptance of his guaranty by the appellee except such as might be implied from the telegrams and letters, until the 22d day of April, 1886, when the appellee drew on him through the banks for $275. The appellee charged the goods furnished Morduant to the appellant, but the latter had no knowledge of that fact until after the commencement of this action. The claim, amounting to $275, is due and unpaid.

*Sixth.* Since the commencement of the action a receiver has been appointed for the appellee in Cook county, Illinois, by some court of competent jurisdiction, and upon sufficient authority from such court, the receiver has sold and assigned the claim sued upon to one Isaac D. Fletcher, who owned the same at the time of the trial.

The conclusions of law upon the finding are general, and to the effect that the appellant is liable for the payment of the claim sued upon.

Counsel for appellant contends that the conclusions are wrong, because:

*First.* The appellee, being a corporation, could not contract in any but its true corporate name, and the contract sued upon being made in an assumed or fictitious name is not enforceable.

*Second.* A receiver having been appointed for the appellee pending the suit, its corporate existence became extinct, and it was no longer a legal entity, and a judgment in its favor would be absolutely void.

*Third.* Appellant's engagement was that of a conditional guarantor, and no notice of acceptance was given him by the appellee, so he never became liable upon the guaranty.

In relation to the first proposition, there seems to have been no question in any of the transactions or proceedings concerning the identity of the appellee. It appears to have

been as well known by its popular name as by its true name, as it transacted business and advertised largely in the assumed name.

While it is true that every corporation must adopt a name and should transact business in the name of its adoption, this requirement of the law was designed for the purpose of identification chiefly, and a contract by a corporation in a name different from its true corporate name may be enforced by either party where no question is raised disputing the identity of the corporation. The rules of law relating to the names of corporations are the same as those applicable to individuals. *Louisville, etc., R. W. Co.* v. *Caldwell*, 98 Ind. 245; *Gaff* v. *Theis*, 33 Ind. 307; Morawetz Private Corp., section 354.

In support of the second proposition it is insisted that by the appointment of the receiver the corporate existence of the appellee was dissolved, and a judgment in its favor rendered in its corporate name after that fact is a nullity.

After dissolution a corporation has no existence in contemplation of law, and is incapable of enforcing any rights or maintaining any sort of proceedings in the courts. Morawetz Private Corp. section 1032.

But the fallacy of counsel's position is in assuming that the appointment of a receiver *ipso facto* dissolves a corporation. This fact might imply insolvency, but insolvency is not equivalent to dissolution, even though adjudicated. An insolvent corporation in the hands of a trustee or receiver maintains its existence and preserves its functions, at least as far as may be necessary to fully wind up its affairs. Such insolvency might afford sufficient grounds to support a judgment dissolving a corporation, but every corporation exists as a legal entity until it expires by limitation or is declared dissolved by the judgment of a court of competent jurisdiction in a suit brought for that purpose. *Barren Creek, etc., Co.* v. *Beck*, 99 Ind. 247; *Kincaid* v. *Dwinelle*, 59 N. Y. 548; *State, ex rel.,* v. *Merchant,* 37 Ohio St. 251; *National Bank*

v. *Insurance Co.*, 104 U. S. 54; Cook Stock and Stockholders, section 631; Morawetz Private Corp., section 1010.

In the absence of express authority from the court appointing him, the receiver could not maintain a suit for the enforcement of the claim in this case in his own name, and no such authority having been established we must presume that none was given. It was the duty of the receiver then, under the circumstances, to continue the prosecution of the suit in the name of the appellee, and after the sale and assignment of the demand sued upon and the transfer thereof by the receiver to Fletcher, it was entirely proper for the court to permit the suit to be carried on, as it was originally begun, for the benefit of Fletcher. This is authorized by section 271 of the code. The judgment can not be held erroneous upon this ground.

The last proposition asserted by appellant's counsel presents for our consideration a much more serious question, and one not altogether free from embarrassment. It is patent that the finding and judgment are based entirely upon the second paragraph of complaint.

The contract was written, and the first paragraph of the complaint declares upon a parol promise, express or implied, upon the part of the appellant to pay for the goods.

Every complaint must proceed upon some definite theory, and it is a familiar rule of pleading that the averments of a complaint or answer must be construed most strongly against the pleader upon all doubtful averments.

The second paragraph of the complaint proceeds clearly upon the theory of a sale of the goods to Morduant and a written guaranty of the payment therefor upon the part of the appellant. The appellant is charged solely as a guarantor, and his message to the appellee of March 18th is declared to be the promise upon which his liability is based.

If the appellee had declared upon the contract contained in or made by the whole correspondence, and charged the

appellant as an original undertaker, an essentially different question would have been raised; but having elected to charge his engagement as that of a guarantor, based upon the one telegram, his liability must be measured accordingly. *Wills* v. *Ross*, 77 Ind. 1.

In passing upon the appellant's liability, we are permitted to consider the special finding only to the extent that it is pertinent to the issues as made by the pleadings. The complaint alleges a sale of goods to Morduant on the 22d day of March, 1886, upon the faith of the appellant's written guaranty, dated on the 18th of the same month, and pre-. sumably received upon the day of its date. It does not purport to guarantee the payment of an existing demand, nor is it contemporaneous with and part of the main transaction. As declared upon, the engagement of the appellant is that of one who offers to become responsible for a credit which may, or may not, be given to another. A guarantor is a favorite of the law, and his liability is not to be enlarged by construction.

According to the facts found by the court, Morduant applied to the appellee for the purchase of an outfit for his troupe, and at his procurement, the appellee telegraphed, requesting the appellant to become responsible for the payment of the order about to be given by Morduant, which would amount to about $270.

If the appellant had assented to this request, the contract between them would have been consummated, as it would have contained all of the ingredients of a complete contract. And the only thing remaining would have been to have completed the transaction with Morduant. Where a request is made by the guarantee, though only for a proposition of guaranty, and is assented to by the guarantor, no notice of acceptance is necessary, because then there is a union of the minds of the parties upon that subject, and the guarantor is bound to know to what extent his guaranty has been acted upon. *Davis* v. *Wells*, 104 U. S. 159.

But in the case before us, the appellee requested one thing and the appellant proposed another substantially different thing. The one requested an absolute assumption of payment, the other proposed to guarantee payment within thirty days. Our conclusion is, that the contract sued upon and supported by the findings proper to be considered, was a proposition to guarantee payment of a debt to be contracted, and the appellant was entitled to notice of acceptance. *Furst, etc., Co.* v. *Black,* 111 Ind. 308 ; *Milroy* v. *Quinn,* 69 Ind. 406 ; *McMillan* v. *Bulls Head Bank,* 32 Ind. 11 ; *Thompson* v. *Glover,* 39 Am. R. 220, and note ; Brandt Suretyship and Guaranty, section 157 *et seq.*

In arriving at this conclusion, we have considered only the correspondence between the parties which the appellee has fixed upon as the basis of its right. The subsequent correspondence can not be taken into account as controlling, enlarging or limiting the appellant's liability upon the contract declared upon, but consists simply of items of evidence and is not properly in the finding.

We come now to the question of notice of acceptance. After copying, *in extenso,* all of the correspondence between the parties, the court found that no notice of acceptance had been given " other than is implied from the letters and telegrams heretofore set out."

All the letters and telegrams, except what the appellee has elected to declare upon as the basis of the appellant's liability, although set out in the finding, must be eliminated therefrom as mere evidence. *Hessong* v. *Pressley,* 86 Ind. 555. We are supported in this view, also, by the learned counsel for the appellee who, in their brief, say : " Our position is, that the court in the findings has not found, as a fact, what contract was made between plaintiff and defendant ; in other words, the court has recited the evidence upon which an appellate court is asked to find, not only whether the conclusions of law are correct, but also what kind of a contract was made between the parties. The finding reads : ' The

contract between the defendant and plaintiff consists wholly of telegrams and letters, which are as follows : ' Then follows a copy of each letter and telegram." * * * Counsel proceed to say : "It is well settled in our State that evidence recited will not answer for facts required in special findings, and the facts, therefore, not being properly in the record, the court will disregard those findings or parts of findings which are evidence, and thereupon will be bound to conclude that the general finding and judgment of the court is correct and affirm the ruling of the court below."

Notice of acceptance of a proposition of guaranty is a question of fact to be found by the jury, or court, the same as any other issuable fact in a given case. In this case there was absolutely no finding upon the question of notice. It was the duty of the trial court to draw the inferences from the evidence upon this as well as all the other questions involved, and to state its inferences as ultimate facts proved at the trial. It was not enough for the trial court to state the evidence upon the question of notice, however conclusive it may have been, and leave it for this court to make the application. This was the exclusive duty of, and solely within the province of the trial court. We are bound to disregard the items of evidence set out in the finding. *Woodfill* v. *Patton,* 76 Ind. 575 ; *Dixon* v. *Duke,* 85 Ind. 434; *Hessong* v. *Pressley, supra.*

Counsel for the appellee are in error in the view that this court has the right to disregard the special finding because evidence, and not facts, are found, and affirm the case upon the general finding. The request for a special finding was properly made, and can not be disregarded, and the only duty left for us is to eliminate from the special finding all matters of evidence and conclusions, and declare who shall have judgment upon the proper facts.

There having been no finding upon the question of notice of acceptance of the guaranty, we must presume no such notice was given ; and upon the theory of the case, as we are

compelled to construe it, the conclusion necessarily follows that the trial court erred in its conclusions of law.

The judgment is reversed, with instructions to the trial court to restate its conclusions of law in accordance with this opinion, and to render judgment thereon in favor of the appellant.

Filed April 14, 1891.

## ON PETITION FOR A REHEARING.

CRUMPACKER, J.—Counsel for appellee, in a petition for a rehearing, ask a reconsideration of some of the questions decided in the original opinion, and particularly our conclusion that the letters and telegrams contained in the special finding, excepting the one sued upon, are mere matters of evidence.

It is argued that the whole correspondence constitutes the contract from which the appellant's liability should be measured, and the proper practice is to set out the written contract in a special finding when it is made the basis of an action.

Upon this theory the contract proved at the trial would be radically and fundamentally different from that sued upon, and thus a recovery would be defeated.

Having elected to sue upon the promise contained in a single telegraphic message, the appellee can not be permitted to recover upon the contract created by the whole correspondence, and the letters and telegrams, not made the basis of the action, are mere items of evidence, and have no place in the special finding.

No reasons have been advanced changing our views upon the questions involved and considered in the original opinion.

We are asked to modify the mandate, and permit an application to be made for a new trial, on the ground that the finding contains evidence upon which the trial court would have been justified in finding ultimate facts warranting a judgment in favor of the appellee. Upon reflection we are

of the opinion that the ends of justice would be promoted in making the modification. It is therefore ordered that the mandate in the original opinion be changed to read as follows : The judgment is reversed, at the costs of the appellee, with instructions to the trial court to grant a new trial of the cause, provided the appellee makes the proper motion therefor within ninety days, otherwise the trial court is instructed to restate its conclusions of law in accordance with the opinion, and render judgment thereon in favor of the appellant.

In all other particulars the petition is overruled.

Filed June 25, 1891.