Filed June 11, 1896.

No. 1,419.

## The Arcade File Works *v.* Juteau.

Master and Servant.—*Injury to Employe.*—*Defective Machinery.*— *Inexperience of Employe.*—It is the duty of an employe who is operating machinery with which he is unfamiliar, to inform his employer, and if he conceals his inexperience and undertakes to operate such machinery and is injured by reason of his inexperience, the employer is not answerable therefor.

Same.—*Condition of Machinery.*—The servant has a right to assume that the master has done his duty, and that the machinery furnished him with which to work is in reasonably good condition and repair and that the natural risks attendant upon its use are not increased by defects.

SAME.—*Conflict of General and Special Findings of Jury.*—A general verdict in favor of a servant for injuries received by reason of the defective condition of machinery cannot stand where the answers to interrogatories negative a finding of the defect alleged in the complaint as the basis of the action, although another and distinct defect is found, where no amendment of the complaint was made to conform to the proof.

From the Hamilton Circuit Court.

*Shirts & Kilbourne,* and *Keltner & Hendee,* for appellant.

*Wood & Ellis,* and *Fertig & Alexander,* for appellee.

Ross, C. J.—The appellee sued and recovered judgment in the court below against appellant for personal injuries received by him while in its employ.

The action was commenced in the Madison Circuit Court, and after issue joined, the venue was changed to the Hamilton Circuit Court.

The specifications of error assigned in this court are, namely:

"1. The court erred in overruling appellant's demurrer to the complaint.

"2. The court erred in overruling the motion for a new trial.

"3. The court erred in overruling appellant's motion for judgment on the answers of the jury to the interrogatories, notwithstanding the general verdict."

The material facts alleged in the complaint are as follows: That the appellant was operating and maintaining a file and rasp factory; that on the 1st day of September, 1892, the appellee was employed by the appellant "to run, operate, manage, and grind small files upon a small file-grinding machine," then used by appellant in the prosecution of its business; that said machine was safe and non-hazardous to operate, and one that appellee was accustomed to operate;

that, under and pursuant to the terms of such employment, he took charge of said machine, and run and operated it continuously from the time of his employment until December 3, 1892, when he was "ordered, directed, and compelled" by appellant, under threat of being discharged from its employ, to leave his said employment "and to take charge of, run, and grind large flat and square files upon another and different machine" which was out of repair, in that the "groove or slot" which held the files in place was worn out, so that when he went to operate the machine the groove, or slot, broke and gave way, and the files falling caught appellee's hand and forced it between the file plate and the grind stone, crushing and lacerating his hand and fingers so that it was necessary to amputate three of the fingers. It is also averred that appellee was without fault contributing to his injury; "that he was ignorant of the dangerous and defective condition" of the machine, not having been cautioned of its dangerous condition, neither had he been instructed how to operate the machine so as to prevent his hand from being caught between the file plate and the grind stone; that he was not familiar with that kind of machine, never having operated or attempted to operate one, prior to the time he was injured. There is also an allegation that the appellant knew the machine was out of repair and unsafe and dangerous to use on account thereof.

Counsel for appellant insist that "the complaint does not proceed upon any fixed or definite theory," but that the facts alleged proceed upon three separate and distinct theories, and that, construing the facts as proceeding upon any one theory, they are insufficient to state a cause of action.

We need hardly affirm what is so well settled, not only by the adjudicated cases, but by the rules of

good pleading, that a complaint must proceed on a single definite theory, and be good upon that theory, or it will not be good at all. *Pennsylvania Co.* v. *Clark*, 2 Ind. App. 146; *Hasselman* v. *Japanese, etc., Co.*, 2 Ind. App. 180; *Carter* v. *Lacy*, 3 Ind. App. 54; *Thompson* v. *State, ex rel.*, 3 Ind. App. 371; *Western Union Tel. Co.* v. *Reed*, 96 Ind. 195; *Leeds* v. *City of Richmond*, 102 Ind. 372; *Moorman* v. *Wood*, 117 Ind. 144; *Racer* v. *State, ex rel.*, 131 Ind. 393; *Jackson* v. *Landers*, 134 Ind. 529.

Its theory is determined, not from fragmentary or isolated averments, but from its general scope and tenor. *Thompson* v. *State, ex rel., supra; Over* v. *Schiffling*, 102 Ind. 191; *Monnett* v. *Turpie*, 133 Ind. 424; *Comegys* v. *Emerick*, 134 Ind. 148; *Balue* v. *Taylor*, 136 Ind. 368.

We agree with counsel for appellant, that an employe of mature years, who is removed from one line of employment and set to work in another without objection, and is then injured while operating machinery with which he was unfamiliar, or which he did not know how to operate, cannot recover from his employer for such injuries, unless his employer knew that he did not know how to operate the machine, or, he having informed his employer of his inexperience, the latter fails to instruct him. If a servant is ignorant of the method of operating machinery with which he is to work, it is his duty to inform his employer, and if he conceals his inexperience, and undertakes to work with machinery, with the operation of which he is unfamiliar, and is injured by reason of his inexperience, the employer is not answerable therefor.

"When a servant undertakes to engage in a master's service, and to perform certain duties, the master has a right to assume that he is qualified to perform the

duties of the position he seeks to occupy, and competent to apprehend and avoid all the apparent and obvious hazards of such service." *American Wire Nail Co.* v. *Connelly*, 8 Ind. App. 398.

And the same presumption arises when a servant employed to perform labor in one particular branch or department of a factory, is transferred by the master to another branch or department, and assigned to perform other and different work from that for which he was originally employed.

It must be presumed that a servant will not undertake to perform labor or operate machinery concerning which he has no knowledge or experience. Hence, his willingness to undertake the work is sufficient to warrant the master in assuming that he is competent, unless it is shown that the master knows to the contrary.

The master has no right to presume that because the servant undertakes the performance of the new duties assigned him, he assumes the risks arising from the use of defective machinery. On the contrary, the servant has a right to assume that the master has done his duty, and that the machinery furnished him with which to work is in reasonably good condition and repair, and that the natural risks attendant upon its use is not increased by defects.

"An employe has the right to repose confidence in the prudence and caution of his employer, and rely upon the safety and suitableness of implements or appliances with or about which he is required to work, and that the place assigned him to work is safe from any hidden or undisclosed perils which are not open and obvious to his senses." *Cincinnati, etc., R. W. Co.* v. *Roesch*, 126 Ind. 445.

In the complaint before us, it is alleged that the machine which appellee was ordered to take charge

of, run, and operate, was out of repair, that appellant knew of its defective condition, and that appellee was ignorant thereof.

This seems to be the prevailing theory of the complaint, and, so far as any objection has been pointed out, we think it states a cause of action.

The jury, with their general verdict, answered and returned the following interrogatories, submitted to them at the request of appellant, viz:

"Question 1. How long had the plaintiff been working in file factories, or in operating file-grinding machinery, before receiving the injury complained of?

"Answer. Three years.

"Quest. 2. Was the file-grinding machinery upon which plaintiff claims to have received his injury out of repair at the time he commenced to use it on the morning he received such injury?

"Ans. Yes.

"Quest. 3. If you say 'yes' to question No. 2, how long had it been out of repair?

"Ans. No evidence.

"Quest. 4. If you say 'yes' to question No. 2, state what part of the machine was out of repair?

"Ans. The file plate was packed too high near the bottom.

"Quest. 5. If you say 'yes' to question No. 2, then state whether or not the plaintiff knew said machine was out of repair?

"Ans. No.

"Quest. 7. If you say 'yes' to question No. 2, state whether or not the fact that the machine was out of repair could be observed by the plaintiff or defendant, either, by the exercise of ordinary care?

"Ans. Could have been by defendant.

"Quest. 8. Was the action of said file-grinding machine controlled by a lever?

"Ans. Yes.

"Quest. 9. When the machine is in motion, can it be stopped by means of a lever?

"Ans. Yes, but not instantly.

"Quest. 10. Did the plaintiff know how to stop the machine by the use of the lever?

"Ans. Yes.

"Quest. 11. Was the plaintiff injured by getting his hand between the plate and the grind stone in an effort to catch files that were dropping out of the plate?

"Ans. Yes.

"Quest. 13. Was it necessary, in the operation of the machine, for the plaintiff to put his hands between the plate and the grind stone?

"Ans. Yes.

"Quest. 14. If you say 'yes' to No. 13, state why?

"Ans. To hold the files in position on file plate.

"Quest. 15. When the files began to fall, if the plaintiff had stopped the machine by the use of the lever, would he have received the injury complained of?

"Ans. Yes.

"Quest. 16. Did the plaintiff know enough to know that if he got his hand between the plate and the grind stone he would receive the injury?

"Ans. Yes.

"Quest. 17. Did the plaintiff know enough to know that it was dangerous to put his hand between the plate and the grind stone, where he received the injury?

"Ans. Yes.

"Quest. 18. If you say the machine was out of re-

pair, state whether or not that fact could be easily detected by the exercise of ordinary care?

"Ans.   Yes, by a skilled workman.

"Quest. 19.   In the operation of the machine by the plaintiff, could he see that the machine was out of repair?

"Ans.   No.

"Quest. 20.   Did the plaintiff notify the defendant, or its superintendent, that the machine was out of repair, before he received the injury?

"Ans.   No.

"Quest. 22.   If the plaintiff had used the lever and stopped the machine thereby, would he have received the injury complained of?

"Ans.   Yes.

"Quest. 23.   If you say 'yes' to question No. 2, state what was the matter with it?

"Ans.   Lower rubber on file plate packed too high, thereby forcing strap off file plate at the bottom.

"Quest. 24.   Did the plaintiff represent himself to the defendant to be an all-round grinder prior to or at the time of his employment?

"Ans.   No.

"Quest. 25.   Did the plaintiff make any objection to working on the machine before he received the injury?

"Ans.   Yes.

"Quest. 26.   If you say 'yes' to question 25, state what the objection was, and to whom it was made.

"Ans.   He hesitated, to Mr. Ham.

"Quest. 27.   If you say 'yes' to question No. 11, state when the files began to fall if the plaintiff could have stopped the machine by the use of the lever?

"Ans.   No.

"Quest. 28.   Does the evidence show that the de-

fendant knew the machine was out of repair at or before the injury was received?

"Ans.    No.

"Quest. 29.    Did the defendant compel the plaintiff to work upon the machine where he alleges he received the injury, by any threat to discharge him?

"Ans.    No.

"Quest. 30.    Could the plaintiff have avoided the injury by withdrawing his hands from the file plate?

"Ans.    No, because his hand was held fast by a file.

"Quest. 31.    Did the plaintiff see the files begin to fall just before he pushed the lever to start the machine in motion?

"Ans.    No, just after it started.

"Quest. 32.    Was the file plate used by the plaintiff at the time he claims to have received the injury, constructed in an ordinary safe manner?

"Ans.    No."

It is insisted, on the part of the appellant, that the court erred in overruling the motion for judgment in its favor on the answers to the interrogatories, for the reason that the answers show that the general verdict is not founded upon the state of facts alleged in the complaint.

The cause of action stated in the complaint is the only one upon which the appellee is entitled to recover.

Of course, every reasonable presumption is indulged in favor of the general verdict, hence it will be presumed that the jury found, as alleged in the complaint, that the machine which caused appellee's injury was out of repair, in that the groove or slot which held the files in place was worn out, so that when he went to operate the machine the "groove or slot" broke and gave way, and the files falling, caught his hand and forced it between the file plate and

grind stone; that the appellant knew of the defective condition of the machine, and that appellee was ignorant of its condition. These facts were material, and their averment in the complaint necessary to the statement of a cause of action. They were the gist of the action.

As already stated, it will be assumed, nothing appearing to the contrary, that the jury, in arriving at their verdict, found that appellee had proven all these material facts. If, however, it appears from the answers to the interrogatories, that the jury did not find all of these facts in favor of appellee, the verdict can not stand, for the verdict and judgment must be such only as the pleadings warrant.

As said by the Supreme Court, in *Feder* v. *Field*, 117 Ind. 386, "the law is well settled that a complaint must proceed upon a definite theory; that the cause must be tried on the theory constructed by the pleadings, and such a judgment as the theory selected warrants must be rendered, and no other or different one." See also *Board, etc.*, v. *Ellsworth, Admr.*, 9 Ind. App. 566 (569).

The jury, by interrogatory number two, were asked whether the machine, in the operation of which appellee was injured, was out of repair, and by interrogatories four and twenty-three, if it was out of repair, in what respect.

In answer to the former, the jury found that the machine was out of repair, and in answer to the latter, that it was out of repair in that it was packed too high.

By interrogatory number three, the jury were asked to state how long the machine was out of repair, and their answer was, "No evidence."

By interrogatory number twenty-eight, the jury

were asked whether the defendant knew the machine was out of repair, and they answered, "No."

Without the allegation that the appellant knew of the defective condition of the machine, the complaint would be bad. This was a material fact, and, unless proven by appellee, he failed to make out his case, and the verdict would not be sustained by sufficient evidence.

That he did not prove such knowledge, is evident from the fact that the jury expressly find that appellant did not know of the defect.

A master is held responsible to a servant for injuries received by the latter, resulting from defective machinery, if the defect was latent and unknown to the servant, and the master knew of the defect, or the defect had existed for such a length of time that the master, in the observance of his duty to his servant, in looking after and inspecting his machinery, might with reasonable diligence and care, have discovered its true condition.

In this case, the jury not only find that the appellant did not know of the defective condition of the machinery, but that there is no evidence how long the defect existed prior to the time appellee was injured.

The legal presumption in such cases, when there is no evidence to prove the converse, is, "that the master has performed his duty. *Hard* v. *Vermont, etc., R. R. Co.*, 32 Vt. 473; Wood Master and Servant, 708; 3 Wood Ry. Law, 1468. This presumption the employe must overcome, for it stands until overthrown, as a *prima facie* case." *Pennsylvania Co.* v. *Whitcomb, Admr.*, 111 Ind. 212.

The jury also find that the defect in the machine which caused the injury was not that the "groove or slot" was worn out, as alleged in the complaint, but that the "lower rubber on file plate" was packed too

high, thereby forcing the strap off the file plate at the bottom.

The general verdict and the answers to the interrogatories are irreconcilable, for it appears from the latter that the former does not rest upon the facts necessary to make the case alleged in the complaint.

The appellant objected, at the proper time, to the plaintiff (appellee) making proof of a defect in the machine which caused his injury, different from that alleged in the complaint, but the court overruled this objection, and permitted the proof to be made. No amendment of the complaint was made to conform to the proof.

It is well settled, by many authorities, that the plaintiff, in order to be entitled to recover, must prove all the material allegations of his complaint, and he can not recover upon a state of facts which, although they make a case, are different from those alleged. *Louisville, etc., R. W. Co.* v. *Renicker*, 8 Ind. App. 404; *Terry* v. *Shively*, 64 Ind. 106; *Thomas* v. *Dale*, 86 Ind. 435; *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160; *Bremmerman* v. *Jennings*, 101 Ind. 253; *Hasselman* v. *Carroll*, 102 Ind. 153; *Chicago, etc., R. W. Co.* v. *Burger*, 124 Ind. 275.

"The parties must recover upon the allegations of the pleadings. They must recover *secundum allegata et probata*, or not at all. It must be so in the nature of things, so long as our mode of administering justice prevails. It would be folly to require the plaintiff to state his cause of action, and the defendant to disclose his grounds of defense, if, on the trial, either or both might abandon such grounds and recover upon others which are substantially different from those alleged." *Boardman* v. *Griffin*, 52 Ind. 101.

He must recover upon the case stated in his complaint, and where the court finds in his favor a cause

of action substantially different from that stated in his complaint, he cannot recover in that suit. *Brown* v. *Will*, 103 Ind. 71.

Cause reversed, with instructions to grant appellee a new trial, if asked for within ninety days, otherwise to enter judgment in favor of the appellant on the answers to the interrogatories.

Filed May 16, 1895.

## OPINION ON PETITION FOR REHEARING.

Ross, J.—The appellee has filed a petition for a rehearing, and assigns numerous reasons why he thinks it should be granted. The substance of the argument to sustain his insistence, is that there is no variance between the allegations of the complaint and the proof, and that there is no conflict between the answers to the interrogatories and the general verdict.

Counsel seem to find fault, not only with the statement of what we deemed to be the material facts of the complaint, but also as to what we decided constituted the negligence of the appellant, as charged, resulting in appellee's injury.

We probably would not have satisfied counsel better had we set forth in our opinion the entire complaint, and we feel sure that that part of the opinion holding the complaint sufficient would not have appeared so well founded had we done so. As heretofore stated, the complaint charged the appellant with putting appellee to work at and upon a file machine which was defective, dangerous, and unsafe, in a certain respect, namely, in that the "groove or slot" which held the files in place was worn out, so that when he went to operate the machine, the groove or slot gave way, and the files which were placed therein fell, catching his hand and forcing it between the grindstones, injuring it, etc. The appellee saw fit to allege

wherein the machine was out of repair, defective, and dangerous, and it devolved upon him to prove the negligence charged in order to recover. When he charged that the appellant's negligence consisted in setting him to work at and upon a machine, which he alleges was defective because the "groove or slot" was worn out, so that it would not hold the files, but broke, permitting them to fall, causing him to be injured, he does not make out a case, when he fails to prove that the "groove or slot" was worn out, but simply proves that a fellow-workman, who had operated the machine just before appellee, had packed the lower rubber on the file plate too high, thereby forcing the strap off the bottom of the file plate, thus causing the files to fall, catching his hand and forcing it between the grindstones. Even were the allegations of the complaint broad enough to charge the appellant with knowledge that the packing of the lower rubber on the file plate was too high, the answers of the jury to the interrogatories show, not only that the appellant had no knowledge or notice that it was packed too high, but that the evidence fails to show how long it was in that condition prior to the time appellee was injured. If the appellant is to be held responsible for the high packing of the lower rubber of the file plate, it is because it had notice, either actual or constructive, of the existence of such packing. The jury have found that the appellant had no notice or knowledge of its existence, and they also find that the evidence does not disclose how long it had been in that condition; but it does show that the party who operated the machine just prior to the appellee, had operated it for a long time without being injured, but whether with the lower rubber of the file plate packed so high, does not appear, and it also appears that the appellee had been operating the ma-

chine for several hours prior to the time he was injured.

The appellee's own testimony shows that he is an experienced operator of file-grinding machines, and had been working in appellant's factory for some time prior to the time he was injured, on a machine similar in construction to the one he was operating when injured. He does not stand in the position of an inexperienced person, set to work with a machine, of the workings of which he knew nothing, and of the dangers in operating which he had no knowledge, but he must be dealt with in the light of the fact that he was experienced in the work, knew of the usual dangers, and, as shown by the evidence, knew that every workman packed his own machine to suit himself. In fact, the evidence in this case shows, although no mention was made of it in the original opinion, that the appellee's knowledge of such machinery, and his opportunities for obtaining and knowing its operation and dangers, made him by far more competent to know whether it was in proper working order than almost any other person in appellant's employ, except, perhaps, the person who had previously operated it. From the evidence, the inference could properly have been drawn that the appellee's opportunity of seeing and knowing of the condition of the machine were equal to, if not better than appellant's. It might be added, that the evidence on this question is not only uncontradicted, but apparently conclusive. From what we have already said, it is probably better that we extend this opinion no further, inasmuch as the appellee may desire to retry his case in the court below.

The petition is overruled.

Filed June 11, 1896.