No. 1,485.

## CALLAWAY, RECEIVER, v. MELLETT.

APPELLATE PROCEDURE.—*Waiver.*—An assignment that the court erred in overruling the demurrer to complaint is waived where no objection to the sufficiency of the facts alleged in the complaint is pointed out on appeal.

PLEADING.—*Duplicity Of.*—Where the facts pleaded are such that they may be construed as proceeding upon different theories in the statement of a cause of action, the construction placed upon them by the trial court will be followed by this court.

COMMON CARRIER.—*Railroad Ticket.—Contract.*—The face of a railroad ticket is, as between the passenger and conductor, conclusive evidence as to whether or not the passenger is entitled to ride; its terms constitute the contract between the passenger and the company.

SAME.—*Railroad Ticket.—Ejection of Passenger.—Exemplary Damages.*—One who applies for a ticket entitling him to ride, and pays the usual fare therefor, and accepts without reading it because of the poor light, an excursion ticket, the time limit of which has expired, given him by the ticket agent, on the latter telling him that it is all right and will be accepted by the conductor, may recover exemplary damages from the company for his ejection from the train on presenting such ticket.

From the Grant Circuit Court.

*S. O. Bayless* and *C. G. Guenther*, for appellant.

*J. C. Blacklidge, C. C. Shirley* and *B. C. Moon*, for appellee.

ROSS, J.—The appellee sued and recovered judgment in the court below, in the sum of $500.00, against Samuel R. Callaway, receiver of the Toledo, St. Louis & Kansas City Railroad Company. Since perfecting this appeal, said Callaway has resigned as such receiver, and R. B. F. Peirce has been appointed in his

stead, and substituted as the party appellant herein.

Two specifications of error have been assigned in this court, the first being that "The court erred in overruling the demurrer to the complaint," and the second, that "The court erred in overruling the appellant's motion for a new trial."

No objection to the sufficiency of the facts alleged in the complaint to constitute a cause of action, has been pointed out, hence the first specification of error is deemed waived. Counsel do urge, however, that the facts alleged, and upon which this action is predicated, sound in both contract and tort, and are so blended that it is impossible to determine upon which theory the complaint proceeds.

It is well settled, that a complaint must proceed upon a single definite theory. *Pennsylvania Co.* v. *Clark*, 2 Ind. App. 146; *Hasselman* v. *Development Co.*, 2 Ind. App. 180; *Carter* v. *Lacy*, 3 Ind. App. 54; *Thompson* v. *State, ex rel.*, 3 Ind. App. 371; *W. U. Tel. Co.* v. *Reed*, 96 Ind. 195; *Leeds* v. *City of Richmond*, 102 Ind. 372; *Moorman* v. *Wood*, 117 Ind. 144; *Jackson* v. *Landers*, 134 Ind. 529, and that the plaintiff must recover "*secundum allegata et probata*," or not at all. *Louisville, etc., R. W. Co.* v. *Renicker*, 8 Ind. App. 404; *Boardman* v. *Griffin*, 52 Ind. 101; *Terry* v. *Shively*, 64 Ind. 106; *Thomas* v. *Dale*, 86 Ind. 435; *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160; *Bremmerman* v. *Jennings*, 101 Ind. 253; *Hasselman* v. *Carroll*, 102 Ind. 153; *Brown* v. *Will*, 103 Ind. 71; *Chicago, etc., R. W. Co.* v. *Burger*, 124 Ind. 275.

"The object of pleading is to present, in a distinct and definite form, questions of fact for trial, and this object cannot be accomplished unless parties are required to state positively the facts upon which they rely, and in accordance with a distinct, definite and

controlling theory.  If ambiguous pleadings are tolerated, no issue can be framed which will present, in an intelligible form, questions for trial, and perplexity and confusion will necessarily result.  It is no great hardship to require obedience to rules of pleading and logic, and not to do so will result in the evil of leaving disputants without a direct issue, and the court without the means of determining the competency or relevancy of evidence.  In order to bring the parties to an issue, it is necessary to require them to make their pleadings conform to some definite theory, and to be sufficient upon that theory."  Says Elliott, C. J., in the case of *Western Union Tel. Co.* v. *Reed, supra.*  And, again, the same court, in the case of *Chicago, etc., R. R. Co.* v. *Bills,* 104 Ind. 13, says: "It is essential to the formation of issues, and to the intelligent and just trial of causes, that a complaint should proceed upon a distinct and definite theory. It would violate all rules of pleading to permit a complaint to be construed as best suited the exigencies of the case; to allow such a course of procedure would produce uncertainty and confusion, and materially trench upon the right of the defendant to be informed of the issue he is required to meet.  The rule is, that the complaint must proceed on a distinct and definite theory, and upon that theory the case must stand or fall."

A complaint should not be so drafted that it is susceptible of more than one construction.  It cannot be made elastic, so as to bend or take form with the varying views of counsel. *Mescall* v. *Tully,* 91 Ind. 96; *Toledo, etc., R. R. Co.* v. *Levy,* 127 Ind. 168.

In order that there may be no changing front, as it were, as the cause proceeds, the facts alleged should be so clearly stated and free from uncertainty or am-

biguity, that the theory upon which the pleading proceeds cannot be mistaken. But when the facts pleaded are such that they are susceptible of more than one construction, so that they may be construed as proceeding upon different theories in the statement of a cause of action, the construction placed upon them by the trial court will be the theory upon which they will be considered by this court on appeal. *Cleveland, etc., R. R. Co.* v. *DeBolt*, 10 Ind. App. 174.

The theory upon which the complaint proceeds is, as we view it, to recover damages from the appellant, for a tortuous breach of its contract of carriage, resulting in the appellee's wrongful expulsion from its train.

There is little, if any, conflict in the adjudicated cases that, as between the passenger and the conductor, the face of the ticket is conclusive evidence of the passenger's right to ride. *Bradshaw* v. *Railroad Co.*, 135 Mass. 407; *McKay* v. *Railway Co.*, 34 W. Va. 65, 11 S. E. Rep. 737; *Townsend* v. *Railroad Co.*, 56 N. Y. C. A. 295; *Frederick* v. *Railway Co.*, 37 Mich. 342; *Shelton* v. *Railway Co.*, 29 Ohio St. 214; *Dietrich* v. *Railroad Co.*, 71 Pa. St., 432; *Petrie* v. *Railroad Co.*, 42 N. J. Law, 449; *Railroad Co.* v. *Griffin*, 68 Ill. 499; *Hall* v. *Railroad, Co.*, 15 Fed. Rep. 57; *Weaver* v. *Railroad Co.*, 3 Thomp. & C. 270; *Pennington* v. *Railroad Co.*, 62 Md. 95; *Johnson* v. *Railroad Co.*, 63 Md. 106; *Peabody* v. *Navigation Co.*, 21 Ore. 121, 26 Pac. 1053; *Vandusan* v. *Railway Co.*, (Mich.) 56 N. W. Rep. 848; *Railroad Co.* v. *Bennett*, 1 C. C. A. 544, 50 Fed. Rep. 496; *Jerome* v. *Smith*, 48 Vt. 230; *Downs* v. *Railroad Co.*, 36 Conn. 287; *Mosher* v. *Railroad Co.*, 127 U. S. 390, 8 Sup. Ct. Rep. 1324; *Boylan* v. *Railroad Co.*, 132 U. S. 146, 152 Sup. Ct. Rep. 50.

Under the earlier adjudications, it was held that a railroad ticket was merely a receipt, or token, evi-

dencing the payment of passage-money, and showing that the purchaser had paid the toll entitling him to ride from one point to another. *Hibbard* v. *Railroad Co.*, 15 N. Y. 455; *Dietrich* v. *Railroad Co.*, 71 Pa. St. 432; *Rawson* v. *Railroad Co.*, 48 N. Y. 212; *Railroad Co.* v. *Bartram*, 11 Ohio St. 457. The later holdings, however, are that the ticket is the contract between the purchaser and the railroad company. *Sleeper* v. *Railroad Co.*, 100 Pa. St. 259; *New York, etc., R. W. Co.* v. *Bennett*, 50 Fed. Rep. 496; *Mosher* v. *St. Louis, etc., R. W. Co.*, 127 U. S. 390, 8 Sup. Ct. Rep. 580; *Boylan* v. *Hot Springs R. R. Co.*, 132 U. S. 146, 10 Sup. Ct. Rep. 50.

And our own Supreme Court, in the case of *Terre Haute, etc., R. R. Co.* v. *Fitzgerald*, 47 Ind. 79, held that the terms expressed on the ticket constituted a contract between the company and the purchaser, and that he was bound thereby.

If a ticket is to be considered merely as a receipt, or voucher, for money paid in consummation of the passenger's part of a contract entered into, whereby the carrier agreed to transport him from one place to another, the right to demand passage upon its presentation must be limited to the person who paid the money and received the ticket, for it is with such person only that the carrier contracted. And the mere delivery of the ticket to another would not transfer the rights of the transferrer to the transferee, and the carrier would have no contract to fulfill with the latter, because he made no contract with him. The rights of one party under a contract cannot be thus transferred. True, the law imposes upon the railroad company the duty of accepting and carrying all proper persons who apply for passage from one station to any other station on its line, but it also permits the company to regulate, in its own way, the manner of receiving and carrying such applicant. The ticket is

evidence of the terms and regulations upon which the company agrees to carry; and, when the passenger has accepted the ticket, he is bound by its terms as much as if he had, by formal agreement, entered into such contract with the company.

We must, therefore, give to a ticket, a more extensive signification than a mere receipt or voucher. A receipt or voucher, strictly speaking, has none of the elements of a contract, for it does not require of the issuer the performance of any obligation or duty, it is simply evidence of payment or delivery. *Krutz* v. *Craig, Admx.*, 53 Ind. 561. And this court, in *Landers* v. *Fisher*, 2 Ind. App. 64 (66), says: "A receipt proper is but the written acknowledgment of' the person signing it, that the money or property mentioned in it was delivered to him."

A mere receipt may be explained, controlled, qualified or even contradicted by parol evidence. *Pauley* v. *Weisart*, 59 Ind. 241; *Beedle* v. *State, ex rel.*, 62 Ind. 26; *Lash* v. *Rendell*, 72 Ind. 475; *Landers* v. *Fisher*, *supra*. But when it is so drafted as to impose an affirmative obligation upon either party, it amounts to a contract, and must be construed, and the rights and obligations of the parties thereunder determined, by the law of contracts in general.

The custom of railroads, in the transportation of passengers, to use tickets which entitle the holder, except in special cases, to be carried upon the terms designated thereon, has become so much a part of the business itself, as to be recognized as a part of the law of the land. The purchaser of a ticket does not, ordinarily, enter into any special negotiations by which the carrier undertakes to carry him, for the custom established by the carrier and those doing business with him, has fixed the terms upon which he may be carried, and if he accepts a ticket limiting the time

within which he may use it for passage, or designating the train upon which it shall be used, he is bound thereby. This custom is established, and all seeking transportation are bound to take notice of it.

Of course, the contracts of carriage may be general or special. For instance, the carrier may offer a ticket good upon certain trains within a specified time and to be used only by the person purchasing it, and upon such terms as are embraced therein, such a ticket, unless it is the kind regularly issued to all patrons applying for passage, is special, and must be denominated as such. And when a passenger knowingly accepts a ticket containing limitations, and imposing upon him certain duties to make it available for passage, he is bound thereby. The ordinary ticket, entitling the holder to passage, embraces within its terms the duty which the law imposes upon the carrier to accept and carry, and general rules and regulations of the carrier, and the payment and acceptance of the fare necessary to entitle the purchaser to be carried. All of these elements are ingredient parts of the contract evidenced by the ticket issued by the carrier to the passenger.

It appears, from the undisputed evidence in this case, that the appellee applied to the appellant's ticket agent at Frankfort, for a ticket, entitling him to ride on appellant's train from Frankfort to Kokomo, and that he paid therefor the usual and ordinary amount required for a general passage ticket; that the agent gave him an unused coupon of an excursion ticket, but when the ticket was given to him he asked the ticket agent why he was giving him such a ticket, and the agent assured him that it was all right, and would be accepted by the conductor for his passage from Frankfort to Kokomo. It also appears that the appellant's station, or depot, at Frankfort,

Callaway, Receiver, v. Mellett.

where the ticket was purchased, was so poorly lighted that appellee could not read what was printed or stamped on the ticket, but that relying on the ticket agent's assurance that the ticket was all right, he accepted it, and getting upon the first train going to his destination, tendered it to appellant's conductor, who examined it, and refused to accept it for passage, because it had, as shown on its face, become worthless for passage on account of the expiration of the limit designated thereon for its use.

When a purchaser accepts a ticket which he knows, or by the use of ordinary care he could ascertain, is not good for passage under the rules and regulations of the carrier, he cannot insist on being carried thereon; and in the event he is ejected for not having a valid ticket, recover damages for such expulsion. There are cases holding that where the railroad company's ticket agent, by reason of his negligence, mistake, or inadvertence, has given the purchaser the wrong ticket, the purchaser may recover damages from the company if he is refused passage on his ticket, but those cases all proceed upon the theory that the passenger was wholly without fault. This rule is eminently proper and just to both parties, for the carrier should answer for the mistakes or negligence of its agents, to parties doing business with such agents, when the parties are free from fault.

The appellee, in good faith, and without any fault on his part, accepted from appellant's ticket agent at Frankfort, a ticket which such agent assured him would be accepted for his passage, and, having no means of ascertaining that the ticket was not good for that purpose, he took passage on appellant's train. Under such circumstances, the appellant is liable. Appellee paid for a ticket which would entitle him to ride on appellant's train from Frankfort to Kokomo,

and, when he saw that the ticket agent was giving him a ticket which he knew was not the ordinary ticket used, he asked the agent why he was giving him an excursion ticket, and the agent assured him it was good and would be accepted by the conductor for his passage. It was not only right and proper, but it was appellee's duty, when he saw and knew that the ticket tendered him was not the ordinary or regular ticket used for passage, to inquire of the agent why he gave him such a ticket, and he had a right to rely upon the representations of the agent that it was good and would be accepted by the conductor, unless he knew that the limit of its use had expired. There is no evidence that he had such knowledge; on the contrary, it appears that he did not know it. He was, therefore, free from fault.

The only other question which has presented any serious doubt in our minds is, as to whether or not the appellee was entitled to recover in this action exemplary or punitive damages.

It is true, that in actions for breach of contract, exemplary or punitive damages are allowable only where the act complained of has been committed willfully and maliciously, or, in the absence of actual malice, where it has been committed under circumstances of violence, oppression, outrage, or wanton recklessness. *Philadelphia, etc., R. R. Co.* v. *Orbann,* 119 Pa. St. 37; *Railroad Co.* v. *Slusser,* 19 Ohio St. 157; *Railroad Co.* v. *Quigley,* 21 How. 202; *Patry* v. *Railroad Co.,* 77 Wis. 218; *New York, etc., R. W. Co.* v. *Bennett, supra.*

And it is also true, that while, as between the conductor and the appellee, under the rules, the latter had no right to insist on being carried on the ticket tendered, and yet, under the facts disclosed in this case, he was rightfully on the train, hence, was wrong-

fully ejected; therefore, under the circumstances, the expulsion was wrongful.

We find no reversible error in the record.

Judgment affirmed.

LOTZ, J., does not participate.

Filed May 26, 1896.

### CONCURRING OPINION.

DAVIS, C. J.—I concur in the result, but not in all the reasoning of Judge Ross.

In their brief, counsel for appellant say this is an action to recover "damages for alleged unlawful expulsion from a passenger train."

A trial by a jury resulted in a judgment in favor of appellee, for $500.00.

The only error relied on in this court, is the overruling of appellant's motion for a new trial.

Counsel for appellant say: "The general scope and character of the complaint is that of tort." The allegations, counsel for appellant insist, "clearly indicate the intention to recover for a *wrongful expulsion* from the train." The italicizing is our own.

We agree with counsel for appellant, in their position as to the theory of the complaint. With this view of the complaint, counsel for appellant contend that the court erred in giving the seventh and ninth instructions.

In this connection, we refer briefly to other instructions of the court. In the first instruction the court said to the jury: "This is an action by the plaintiff, against the defendant, to recover damages for the alleged expulsion of the plaintiff from the defendant's train of cars."

After recapitulating the facts alleged in the complaint, the court, in the second instruction, said to the jury, that "if it appears, from a preponderance of the

evidence, that the plaintiff was expelled from said train, as averred in the complaint, and that the other material averments of the complaint have been proven by a like preponderance of the evidence, your verdict should be for the plaintiff."

The preliminary part of the seventh instruction is awkwardly drawn. The gist of this instruction is in the last part thereof. The appellee's right to recover is, as we have seen, based upon his wrongful expulsion from the train, growing out of the act of the agent in selling him an expired excursion ticket. There was no material conflict in the evidence. The facts alleged in the complaint are fully established by uncontradicted evidence.

It is undoubtedly true, that the first wrong of appellant was the act of the agent in furnishing appellee an expired excursion ticket, and that the expulsion by the conductor was in consequence of that wrong. In this sense, appellee's right to recover is based upon the wrong of the ticket agent. Moreover, it may be conceded that the conductor was not guilty of any personal wrong, as stated in the first part of the seventh instruction; because, as between himself and appellant, its rules and regulations, we may assume, justified the act, but as between himself, as the company's representative, and appellee a different question is presented by the concluding part of the instruction.

The contention of counsel for appellant is, that the seventh instruction is incorrect and misleading, for the reason that the ticket was the only evidence of the right to be carried upon the train, as between himself and the conductor, and that "he had no enforceable right to be carried on the ticket as between himself and the appellant."

The material question, therefore, for our consideration in this connection is, whether, in the light of the

evidence and the averments in the complaint, the court erred in saying to the jury:

"If, however, the plaintiff received the expired ex· cursion ticket through the alleged wrong of the ticket-seller at Frankfort, under such circumstances that plaintiff, in the exercise of reasonable and ordinary care, was justified in believing it was good, and he took passage upon the train in good faith, the defend-ant would be liable for damages occasioned to plain-tiff by his expulsion from the train by the conductor, if a full explanation was made by plaintiff, to the con-ductor, of the facts and circumstances constituting the alleged wrong connected with the plaintiff's pur-chase of the ticket."

The preliminary part of the instruction is explained and qualified by the part we have just read. In the first part of the instruction, the theory of the case is not clearly and fully stated, but if the law applicable to the case is correctly stated in that part of the in-struction last quoted, the preliminary statements therein, inconsistent with and contradictory of the propositions of law contained in the conclusions, were harmless as to appellant, because the mistake, if any, is evidently in favor of appellant.

The first part of the instruction, standing alone and unexplained, is more favorable to appellant than the part herein last copied. If the law applicable to the case is correctly stated in that part of the instruc-tion now under consideration, what is said in the pre-liminary part of the instruction standing alone, is wrong, because it is too favorable to appellant, and could not have misled the jury as against appellant.

It is conceded that appellee paid the agent of ap-pellant for a ticket from Frankfort to Kokomo, and that the agent delivered to appellee a ticket which he then said would carry him on the train on which he

was about to take passage, from Frankfort to Kokomo. Appellee noticed, when the ticket was delivered to him, that it was an excursion ticket "from Frankfort to Kokomo," and called the attention of the agent to that fact, and the agent then said to him, "that will carry you." Without going to a gas jet, appellee could not read the condition, among others on the ticket, "that it will be good for return passage on regular trains, regularly scheduled to stop at return destination, until October 28, 1893." The appellee paid the agent the regular full price for the ticket, and relied on the statement of the agent that it would carry him, and accepted it in good faith.

Where a passenger calls for and pays for a ticket from one station on the railroad to another, but is, by mistake of the company's agent, given a ticket which has expired, with which the passenger, without fault, boards the train, believing he has the proper ticket, is he entitled to ride thereon the distance for which he has paid, upon making proper explanations to the conductor? This question was answered in the affirmative in *Evansville, etc., R. R. Co.* v. *Cates,* 14 Ind. App. 172.

If the conductor refuses to heed the statements of the passenger, and ejects him from the train, is his expulsion from the train wrongful, and is the passenger entitled to recover against the company for the consequences? This question was also answered by the court in the affirmative in the case last cited.

In this connection we quote from the opinion of Judge Gavin in that case as follows:

"In the case last referred to (the Beckett case) it is adjudged that one boarding a train without a ticket, by reason of the company's negligent failure to afford him an opportunity to buy one, cannot be required to pay an excess over the ticket fare, but is en-

titled to be carried at the regular lowest ticket rate, and the conductor must listen to his explanation of the circumstances, or the company must respond if he eject the passenger. It was there said: 'The first wrong was by appellant, in failing to furnish appellee a ticket, upon his reasonable demand therefor, and it must answer for all the consequences naturally following from that wrong. The company cannot be permitted to justify its own wrongful conduct by the fact that its servants were acting according to its directions or rules.

" 'Although the conductor may be acting strictly according to the rules of the company, and doing that, and only that, which, under its rules, he is authorized to do, it by no means follows that his conduct is rightful towards the passenger. Between himself and the company its rules will justify the conductor, but not as between himself, as the company's representative, and the passenger.' In *Chicago, etc., R. R. Co.* v. *Conley*, 6 Ind. App. 9 (16), it was said by this court: 'It is true, that where the passenger has no ticket, or has a ticket so imperfect that it furnishes no sufficient evidence of being genuine and the conductor has nothing to determine the passenger's rights from, except his explanation, he is not bound to take the same as true, unless his failure to have a ticket or a perfect ticket was due to the company's fault.' Again, in *Chicago, etc., R. R. Co.* v. *Ault*, 10 Ind. App. 661, the court said, through Reinhard, J.: 'If the appellee really purchased and paid for a first-class passenger ticket, with a return coupon attached, at the time he testified he purchased it, and presented the same to the conductor, it would strongly tend to prove that his expulsion from the train was wrongful, no matter what the form or wording of the ticket may have been.' Carrying out the

principles underlying these decisions, we do not see
how it is possible to escape the conclusion that where
a passenger calls for and pays for a ticket to one
place, but is, by the mistake of the company's agent,
given a ticket different from that desired, with which
he, without fault, boards the train, believing he has
the proper ticket, he is entitled to ride thereon the dis-
tance for which he has paid, upon making proper ex-
planation; and, if the conductor refuses to heed his
statements, the company must respond.  He has paid
for his ride, and presented, in good faith, the only evi-
dence given by the company of his right to make the
journey.  If the company has not furnished him the
proper token to convey the fact to the mind of its con-
ductor, the blame and the consequences thereof must
both rest upon the company, which is in fault, rather
than upon the passenger, who is not.  In thus holding,
we are in harmony with the views of our Supreme
Court, as expressed in *Godfrey* v. *Ohio, etc., R. W. Co.*,
116 Ind. 30, wherein it was decided that where a
passenger received from the station agent the
wrong ticket, being the reverse of that for which he
asked, he could not ride thereon four months after his
discovery of the mistake, but Judge Mitchell says:
'It is quite probable, if the plaintiff, without having
had ample opportunity to correct the mistake after
discovering it, had offered the ticket on the first trip,
and had been refused passage, he would have been en-
titled to recover for any injury in case he had been
ejected, after having done all he reasonably could do
to rectify the mistake.  The case would then have
fallen within the principles declared in *Lake Erie, etc.,
R. W. Co.* v. *Fix*, 88 Ind. 381, and cases of that class.' "
See also, *Cleveland, etc., R. W. Co.* v. *Beckett*, 11 Ind.
App. 547; *Pittsburgh, etc., R. W. Co.* v. *Berryman*, 11

Ind. App. 640; *Louisville, etc., R. W. Co.* v. *Goben,* 15 Ind. App. 123.

In our opinion, that part of the instruction to which we have been considering the objection made by counsel for appellant, correctly states the law.

It is next insisted that the statement in the last sentence of the seventh instruction, that appellee was not bound to pay his fare a second time, and that his refusal to do so could not be considered in mitigation of damages, is a misstatement of the law. The contention is that, as he had the money with which he could have paid his fare, it was his duty to pay it to the conductor, and thereby have avoided the damages occasioned by the act of the agent in selling him the ticket in question and his expulsion from the train by the conductor.

In giving this part of the instruction there was no error. *Lake Erie, etc., R. R. Co.* v. *Arnold,* 8 Ind. App. 297.

In the last case cited, Judge Lotz said: "Appellant chose to stand upon what it conceived to be its strict legal rights. It can not now be heard to complain if the appellee chose to do the same. It comes with an ill grace for the appellant, after it has pushed what it believed to be its rights to the last extremity, to say that because it offered to carry appellee if he would pay his fare, the damages ought to be mitigated." See, also, *Lake Erie, etc., R. W. Co.* v. *Fix, supra.*

Counsel for appellant insist that, in "an action for a wrongful expulsion, no unnecessary force being used," the appellee was not entitled to recover anything; and, therefore, that the court erred in giving the ninth instruction. In our opinion, under the authorities, the ninth instruction, relative to the measure of damages, correctly states the law applicable to the issues

and the evidence. See *Louisville, etc., R. W. Co.* v. *Goben, supra,* and authorities there cited.

All concur in affirmance of the judgment.

GAVIN, J., concurs in the law as stated by Davis, C. J.

Filed May 26, 1896.